# Richmond.

## Norfolk Southern Railroad Company v. Commonwealth of Virginia, etc.

### January 15, 1925.

1. MOTOR CARRIERS—*Certificate of Convenience—Consent of Municipalities to Use of Streets—Case at Bar.*—In the instant case it was objected that the Corporation Commission granted a certificate of public convenience and necessity to a motor carrier to operate its busses over the streets of the city of Norfolk and the town of Virginia Beach. The consent of the city and town was not first obtained as required by §124 of the Constitution of 1902.

   *Held:* That as neither of the municipalities was complaining of the action of the Commission in the instant case, and the order of the Commission granted a certificate for operation "between Norfolk and Virginia Beach," there was no merit in the objection.

2. STREETS AND HIGHWAYS—*Permission of Municipalities for Use of Streets—§124 of the Constitution of 1902.*—Section 124 of the Constitution of 1902, requiring the consent of councils for the use of streets, was ordained primarily for the protection of the cities and towns of the State.

3. MOTOR VEHICLE CARRIERS—*Certificate of Convenience—Carriage of Colored Passengers.*—An objection to a certificate of convenience and necessity, granted by the Corporation Commission to a motor vehicle carrier to operate between two municipalities, that the motor carrier in its application for the certificate stated that it would not carry colored people, is without merit. At the time of the filing of the application for the certificate, the bus line had made no provision to haul any one. It had the right to secure the permit to operate before buying its equipment. This question is not material until the bus line refuses to carry colored persons and complaint is made. Then the Commission is fully empowered to enforce compliance with the law.

4. MOTOR VEHICLE CARRIERS—*Certificate of Convenience—When Granted—Existing Transportation Facilities—Discretion of Commission.*—Upon application by a motor vehicle carrier for a certificate of convenience and necessity, existing transportation systems should be protected so far as compatible with the public interest. There should be no

unreasonable or unnecessary duplication of service, to the point that efficient service is made impossible. Subject to these limitations when the public convenience and necessity require it, the certificate should be granted. The Commission is vested with a sound judicial discretion in these matters. Its conclusions upon the facts are *prima facie* correct and the court should be slow to disturb them, unless plainly wrong.

5. Motor Vehicle Carriers—*Certificate of Convenience—When Granted—Existing Transportation Facilities—Case at Bar.*—In the instant case, the granting by the Corporation Commission of a certificate of public convenience and necessity to a motor carrier to operate three motor vehicles between Norfolk and Virginia Beach was not erroneous, notwithstanding the fact that the Norfolk Southern Railroad Company was operating efficiently between those points.

6. Motor Vehicle Carriers—*Certificate of Convenience—When Granted—Existing Transportation Facilities.*—That an existing carrier operating between two municipalities, between which a motor vehicle carrier has applied for a certificate of convenience to operate a bus line, is physically capable of carrying all persons desirous of travelling between the points; that its traffic will be curtailed, and that it is not a highly successful enterprise, are elements to be duly considered by the Commission but are not in themselves sufficient to nullify the consideration of the public convenience and necessity of the bus line.

7. Motor Vehicle Carriers—*Application for Certificate—Objection that Proposed Schedule Cannot be Maintained.*—An objection to the granting of a certificate of convenience to a motor carrier, by an existing carrier, on the ground that the proposed schedule of the motor carrier could not be maintained without violating the speed law is not pertinent to the only question before the Commission, viz., whether public convenience and necessity will be served, since it is not a matter of concern to the existing carrier whether the motor vehicle carrier conforms to the speed law. If it does not, it is amenable to the proper authorities, and any schedule that makes it requisite that the traffic laws be broken can and will be modified by the Commission so that conformity to the law is possible.

Appeal from an order of the State Corporation Commission.

*Affirmed.*

The opinion states the case.

*C. M. Bain,* for the appellant.

*Henry Bowden* and *Robt. B. Myers*, for the Commonwealth.

West, J., delivered the opinion of the court.

On July 1, 1924, the State Corporation Commission, in a proceeding in which the Norfolk Southern Railroad Company was respondent, entered an order granting a certificate of public convenience and necessity to the Virginia Beach Bus Line, Incorporated, for the operation of three motor vehicles for the transportation of passengers between Norfolk and Virginia Beach. The case is here on an appeal from that order.

Among the facts contained in the statement of facts certified by the Commission are these:

Norfolk and Virginia Beach are two municipalities about sixteen miles apart, the former being located on Elizabeth river and the latter on the Atlantic ocean. For twenty-five or more years these two municipalities have been connected by the electrical division of Norfolk Southern Railroad Company. The tracks and trains of the company now start from the union depot in the city of Norfolk and run through the city to Haynes avenue, and thence by what is known as the south route direct to Lake Station at Virginia Beach, where the line turns northwardly, paralleling the Atlantic ocean through Virginia Beach and on to Cape Henry, at the mouth of Chesapeake bay, and thence by what is known as the north route back to Haynes avenue and to union depot, thus making a complete loop.

The union depot is in the east end of the city of Norfolk, near the wharves, and its line to Virginia Beach runs through the eastern end of the city. The distance from union depot to 17th street station, the

principal station at Virginia Beach, is seventeen and six-tenths miles. On the direct line from union depot to Virginia Beach there are located sixteen stations, at some of which settlements have grown up and developed. Park avenue, the first stop after leaving union depot, is within the city of Norfolk and all of the other stations are outside of the city of Norfolk.

Virginia Beach is a summer resort with a population of approximately 1,600 people, and during the summer months of June, July and August has a large temporary population, and on holidays and week-ends there is a large movement of passengers between Norfolk and Virginia Beach.

Twice each year, just before and just after the summer season, Norfolk Southern Railroad officials invite a conference with the public of Virginia Beach and Norfolk, for the purpose of establishing schedules which will be mutually satisfactory. From September 1st to June 1st, which is considered the winter season, Norfolk Southern Railroad Company operates twenty-six trains daily from and to Virginia Beach direct, thirteen each way, and eighteen trains, nine each way, from Norfolk to Virginia Beach, via Cape Henry, thus making twenty-two trains each way between Norfolk and Virginia Beach. These trains, on the average, are composed of a motor car and trailer, both carrying passengers, with a seating capacity of approximately fifty passengers per car, and during these nine months the average number of passengers per car is twelve.

During the months of June, July and August, which are considered the summer season, Norfolk Southern Railroad Company operates between Norfolk and Virginia Beach fifty regular daily trains, that is to say twenty-five in each direction, fifteen of which operate in each direction between Norfolk and Virginia Beach,

and ten in each direction between Norfolk and Virginia Beach, via Cape Henry. On Sundays and holidays, in the summer season, Norfolk Southern operates about ten extra trains, or such number as may be necessary to take care of those who present themselves for passage. On special days, such as July 4th, Labor Day and Sundays, in the summer season, the railroad operates thirty-eight per cent above the winter months, and during the entire summer season 110 per cent above. On July 4, 1923, the railroad company operated sufficient cars to carry more than 9,000 passengers. The railroad is supplied with equipment and cars to handle crowds in emergencies and no complaint has been made that it has not furnished adequate service of the character which it undertakes to render.

State highway No. 10 starts where the Princess Anne road, one of the streets of Norfolk, crosses the Virginian Railroad, which is the boundary line of the city of Norfolk, and runs to 17th street, Virginia Beach, at the western boundary of the town, a distance of sixteen and a fraction miles. Eighteenth street runs from the western boundary, eastwardly, to the ocean front. Atlantic boulevard, in Virginia Beach, runs north and south, paralleling the ocean and about one block therefrom, crossing 17th street. Seventeenth street from the western boundary of the town to Atlantic boulevard is hard surfaced, as is Atlantic boulevard from 17th street to the northern boundary of the town. Seventeenth street crosses the Norfolk Southern Railroad tracks at the 17th street station. Atlantic boulevard is between the railroad and the ocean front, one block from each.

State highway No. 10 is sixteen feet wide. There are sixteen roads, most of which are unimproved,

crossing it between the corporate limits of Norfolk and Virginia Beach.

This State highway substantially parallels the south or direct route of Norfolk Southern Railroad between Norfolk and Virginia Beach for its entire length. The distance between the two varies from 1,000 to 5,200 feet. From 17th street, in Virginia Beach, north to Hollies, outside of the northern boundary of the town, Atlantic boulevard is one city block from the railroad.

Applicant's petition was for permission to operate from Boush street and City Hall avenue, in the city of Norfolk, on Boush street to Plume street, on Plume street to Bank street, on Bank street to Princess Anne road, on Princess Anne road to State highway No. 10, on State highway No. 10, as stated in the petition, to Atlantic boulevard, Virginia Beach (but actually to 17th street, Virginia Beach), on 17th street, Virginia Beach, to Atlantic boulevard, on Atlantic boulevard to 40th street, Virginia Beach, a total distance of twenty-three and one-tenth miles, four and nine-tenths miles in the city of Norfolk, and two and one-tenth miles being in the town of Virginia Beach.

In the territory extending from Norfolk to Virginia Beach, with a width of two miles, with State highway No. 10 as the center, there are approximately 460 houses, one-third of which are occupied by colored people.

The applicant, at the time of the application and hearing, had not obtained authority from the town of Virginia Beach to operate on and over its streets. The municipality of Virginia Beach, through its council, passed a resolution protesting against the granting of a certificate for the operation of the proposed bus line between Norfolk and Virginia Beach. The council of

the city of Norfolk at first adopted a resolution opposing this bus line, but after a hearing of both sides the council proceeded to rescind its former action and has withdrawn all opposition to the granting of the application and is not opposing or favoring the line.

The jitney lines operating in the city of Norfolk haul 25,000 people per day from Ghent, West Ghent, Colonial Place, Park Place, Algonquin Park, Lochaven, Lambert's Point and other sections of Norfolk, comprising the best residential and most thickly populated sections of the city and served only partially by the street car lines. Applicant expects to make some arrangement with the jitney lines operating in the city of Norfolk for transfers between the proposed bus line and the jitneys.

The city of Norfolk is now laying a sixteen inch water main on State highway No. 10 from the city of Norfolk to Virginia Beach at a cost of $300,000.

The statute in force at the time the certificate was granted is found in chapter 161 of the Acts of 1923, as amended by chapter 222, Acts of 1924, page 330.

Section 2 of the act reads in part as follows: "But all such persons, * * or corporations * * shall be required only to obtain from the State Corporation Commission a certificate or permit to operate motor vehicles so employed over the improved public highways of this State, which is, or may hereafter be, declared to be a part of the State highway system, or any county highway system, or the streets of any city or town, and to pay the license fees and charges imposed by section 5 of this act upon motor vehicles of like class * *."

Section 3 reads in part as follows: "No motor vehicle carrier shall hereafter operate for the transportation of persons or property for compensation on

any improved public highway without first having obtained from the Commission, under the provisions of this act, a certificate and paid the license fee herein required."

Section 3 further provides: "The Commission shall have power to grant a certificate A in the following cases: (1) to an applicant to operate in territory already served by any certificate holder under this act, or to any other common carrier when the public convenience and necessity in such territory are not already being reasonably served by some other certificate holder or other common carrier, provided such applicant proposes to operate on a fixed schedule and to comply with the other provisions contained in this act and the rules and regulations which may be made by the Commission respecting holders of this class of certificates, and, provided that the existence of a railroad or other motor vehicle carrier in the territory sought to be served by such applicant shall not be sufficient cause for a refusal to grant a certificate, but may be considered by the Commission as constituting good cause for limiting the number of vehicles which such applicant may operate on the route mentioned in his application."

The Norfolk Southern Railroad Company makes the following assignments of error:

"1. That the Commission erred in holding that the public convenience and necessity in the territory proposed to be served by the said motor vehicle carrier are not already being reasonably served by railroad, and that the public convenience and necessity required the service proposed to be rendered by the said bus line.

"2. That the Commission erred in entering the order of July 1, 1924, granting a certificate of public convenience and necessity to the bus line to operate pas-

senger motor vehicle carriers between Norfolk and Virginia Beach.

"3. That the Commission erred in holding that the service rendered by railroad between Norfolk and Virginia Beach was not adequate service.

"4. That the Commission erred in not holding that the public convenience and necessity in the territory to be served was not already being reasonably served by railroad.

"5. That the Commission erred in granting said certificate for the operation of said busses over the streets of the city of Norfolk and the town of Virginia Beach, whereas no permission had been obtained from the council of the city of Norfolk or the council of the town of Virginia Beach, as required by section 124 of the Constitution of Virginia.

"6. That the Commission erred in granting said certificate after petitioner had stated that it would not carry colored people, whereas the law specifically provides for the separation of races as contained in chapter 155 of the Code of Virginia.

"7. That the Commission erred in granting said certificate when the physical facts show conclusively that the proposed schedule filed with the application cannot be maintained without violating the laws of the State of Virginia regulating the speed of motor vehicles."

Assignments of error numbers 2, 3 and 4 are necessarily involved in assignment number 1, and these four will be considered together, after we have disposed of assignments 5 and 6.

[1, 2] Assignment No. 5 alleges that the Commission erroneously granted the certificate for operation of buses over the streets of the city of Norfolk and the town of Virginia Beach, when no permission had been obtained from the council of either the city or the town,

which it is claimed is required by section 124 of the Virginia Constitution.

Section 124 of the Constitution was ordained primarily for the protection of the cities and towns of the State. The applicant's petition states that it is proposed to operate the bus line a distance of four and nine-tenths miles in the city of Norfolk and two and one-tenth miles in the town of Virginia Beach, yet neither of these municipalities is here complaining of the action of the Commission in the instant case. Besides, the order of the Commission now under review grants the petitioner a certificate for the operation of motor vehicle carriers, "between Norfolk and Virginia Beach, Virginia."

In these circumstances, further discussion of assignment No. 5 would be unprofitable.

[3] Assignment of error No. 6, which relates to the fact that the applicant has stated that it would not carry colored people, is without merit. At the time of the filing of the application for the certificate, the bus line had made no provision to haul any one. It had the right to secure the permit to operate before buying its equipment. This question is not material until the bus line refuses to carry colored persons and complaint is made. Then the Commission is fully empowered to enforce compliance with the law.

Assignment of error No. 7 is likewise without merit, as will hereinafter appear.

This brings us to the first four assignments of error, which involve the questions of public convenience and necessity, and the adequacy of the service being rendered by Norfolk Southern Railroad Company.

The statute empowers the Commission to grant a certificate to an applicant when the public convenience

and necessity in the territory served are not being reasonably served by some other certificate holder or common carrier, and provides further that the existence of a railroad or other motor vehicle carrier in the territory sought to be served by such applicant shall not be sufficient cause for a refusal to grant a certificate, but may be considered by the Commission as constituting good cause for limiting the number of vehicles which such applicant may operate on the route mentioned in his application.

[4, 5] Existing transportation systems should be protected so far as compatible with the public interest. There should be no unreasonable or unnecessary duplication of service, to the point that efficient service is made impossible. Subject to these limitations, when the public convenience and necessity require it, the certificate should be granted. The Commission is vested with a sound judicial discretion in these matters. Its conclusions upon the facts are *prima facie* correct and the court should be slow to disturb them, unless plainly wrong. A careful consideration of the record convinces us that there is no error in the action of the Commission in granting Virginia Beach Bus Line, Incorporated, a certificate of public convenience and necessity for the operation of *three* motor vehicle carriers *between* the city of Norfolk and the town of Virginia Beach, Virginia.

The reasons given by the Commission in its opinion filed with the record are so nearly in accord with our views that we hereby adopt the opinion of the Commission as a part of the opinion of the court in the case, as follows:

"The Commission is of opinion, without in any way questioning the efficiency of the service of the Norfolk Southern Railway Company within the scope of what

it undertakes and holds itself out as capable of performing, that the location of State highway No. 10 between Norfolk and Virginia Beach, its character, the character of the country through which it runs, the average distance from the line of the railway company, the inaccessibility on the part of many of the residents along the highway to the stations of the railway company due to the character of the country and the condition of the roads and other physical facts appearing in the record, conduce to the conclusion that a bus line on the State highway between the two points would clearly serve the convenience and, barring private means of conveyance, constitutes a necessity to many of the residents along the highway. This reasoning, of course, applies to the bus line from the standpoint of local traffic.

"The same facts and reasoning lead to the conclusion that a bus line on this highway would tend to develop the intervening country much more rapidly than it would otherwise develop and to an extent that probably would never be reached from a residential standpoint without some mode of public conveyance on the highway, and it is a matter of public convenience and necessity that a bus line should operate in order to bring about the development of the intervening country which probably can never be brought about by the present line of the Norfolk Southern Railway Company.

"From the standpoint of through traffic between the city of Norfolk and Virginia Beach, the Commission considers among other things the size of the city of Norfolk; which by the latest census, 1920, is judicially noticed to be approximately 115,777, and the size of Virginia Beach, especially during the summer season, its character as a summer resort, and the character of the city of Norfolk from a physical stand-

point with reference to its transportation situation, tend strongly to justify the conclusion that another public carrier, besides the Norfolk Southern and of a different character, is thoroughly justified by public convenience and necessity of the residents of the two localities and of the general public going through the city of Norfolk to and from Virginia Beach. Weight is attached particularly in this connection to the fact that the city of Norfolk is a seaport town, a considerable part of the movements of persons through the city is by means of water transportation, notably the Chesapeake and Ohio Railway, Washington Steamboat Line, New York, Philadelphia and Norfolk Railroad and other such lines, and the division of the city into sections by rivers and inlets is such as to make it impractical, if not impossible, that there should be any central point from which residents of the city of Norfolk can conveniently go to Virginia Beach or persons passing through by water can conveniently move to and from Virginia Beach. Certainly the fact is that while Norfolk Southern Railroad serves with convenience and dispatch persons coming into Norfolk over the Norfolk and Western, Virginian and Norfolk Southern Railroad steam branch, and the residents of the city of Norfolk accessible to the street railway lines, it is not only not convenient but highly inconvenient to persons coming in on any of the water transportation systems mentioned and others, and to persons in the city of Norfolk who are residents of the sections served by local bus lines.

[6] "The objection that Norfolk Southern is physically capable of carrying all persons desiring to travel between Norfolk and Virginia Beach; that it is not a highly successful enterprise; that its traffic will be curtailed, while elements to be duly considered are not

such in this case, in the opinion of this Commission, to nullify the consideration of public convenience and necessity in favor of a bus line between the two points.

"If the travel is cut down and the resources cut down to the extent apprehended, the answer is that such situation may be met by a curtailment of service in proportion to and with due regard to the reasonable requirements of the traveling public.

[7] "Objection as to maintenance of the schedule of the bus line within the provisions of the State traffic laws is not deemed by the Commission pertinent to the only question before the Commission, viz., whether public convenience and necessity will be served since it is not a matter of concern to the Norfolk Southern Railway as to whether the bus line operator conforms to such law. If it does not, it is amenable to the proper authorities and any schedule that makes it requisite that the traffic laws be broken can and will be modified by the Commission so that conformity to the law is possible. If such a modified schedule were not such as to appeal to the traveling public the consequences would fall upon the bus line and the railroad company would be the beneficiary. In other words, the impossibility of conforming to the law under a proposed schedule has no bearing, in the opinion of the Commission, upon the question of public convenience and necessity unless it can be shown that such a schedule, that is a schedule impossible to operate under legally, is the only schedule that would satisfy the requirements of public convenience and necessity.

"While the Commission is not influenced to any material extent by the expression of desire on the part of citizens for an additional mode of transportation in their vicinity, since it is the natural desire of any citizen to have all the methods of transportation possible,

the Commission does deem it significant that in this case several witnesses, disinterested except as citizens, and in a position to form intelligent opinions, expressed the unequivocal view that public convenience and necessity would be greatly served by a bus line between Norfolk and Virginia Beach. On the contrary, the testimony of witnesses in opposition was rather as to the efficiency of the services rendered by the Norfolk Southern than as to the lack of necessity for a different kind and character of transportation over a different route and serving, in part, a different territory.

"As previously stated, the Commission by no means holds nor implies that the Norfolk Southern is not rendering reasonable and proper service. It does hold that the record supports the conclusion that the Norfolk Southern does not and cannot under physical and other facts hold itself out to serve the public along State highway No. 10, nor through traffic desirous of a reasonably convenient and different mode of transportation between the two terminals. In other words, the public convenience and necessity will be served by the bus line by *means*, over a *route* and in a *manner* not possible to be served by the Norfolk Southern, without in any way reflecting upon that company as a carrier between the two points involved."

The order of the Commission, granting the certificate to operate three buses *between* the city of Norfolk and the town of Virginia Beach, will be affirmed.

*Affirmed.*