# Richmond

SOUTHSIDE TRANSPORTATION COMPANY v. COMMON-
WEALTH OF VIRGINIA, ETC.

January 14, 1932.

Present, Campbell, C. J., and Holt, Epes and Browning, JJ.

The opinion states the case.

*Shewmake & Gary,* for the plaintiff in error.

*Plummer & Bohannan* and *John R. Saunders, Attorney-General,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

This is an appeal from this order of the State Corporation Commission:

"It is ordered that a certificate of public convenience and necessity be, and the same is hereby, granted to Petersburg, Hopewell and City Point Transportation Company, authorizing the operation of passenger motor vehicle service be-

tween Petersburg and Federal Prison, with the following limitation: No passengers to be taken on or discharged on the Petersburg-Hopewell highway, now served by the Southside Transportation Company."

The petitioner here, the Southside Transportation Company, also applied to the State Corporation Commission for the privilege granted to the Petersburg, Hopewell and City Point Transportation Company. Its application was refused and the action of the Commission on these two applications is now before us.

The following statement of facts is taken from the opinion of the Commission:

"On the 19th day of December, 1930, the Southside Transportation Company, Incorporated, filed its application for a certificate of public convenience and necessity authorizing the transportation of passengers between Petersburg, Virginia, and the Federal prison, Camp Lee, Virginia. And on the 7th day of January, 1931, the Petersburg, Hopewell and City Point Transportation Company, Incorporated, filed its application asking for a certificate of public convenience and necessity to operate motor vehicles in furnishing passenger motor vehicle service between Petersburg and the Federal prison, Camp Lee, Virginia. These applications came on to be heard before the Commission on the 3rd day of February, 1931.

"These applications were for identically the same service and by agreement of counsel they were consolidated and heard together. It is also agreed by counsel that these cases be consolidated for the purposes of appeal, notice of which was given to the Commission September the 7th. The Southside Transportation Company, Incorporated, was assigned Commission number 4410 and the application of the Petersburg, Hopewell and City Point Transportation Company, Incorporated, was assigned Commission number 4425.

"These applicants applied for a certificate of public convenience and necessity authorizing the transportation of passengers for compensation over the public highways between Petersburg, Virginia, and the Federal prison, Camp Lee, Virginia. The Federal prison is located on the south bank of the Appomattox river in the Federal reservation approximately seven miles from Petersburg, Virginia. Both of these applicants are public service corporations duly chartered under the laws of Virginia, and both hold certificates of public convenience and necessity authorizing the operation of motor vehicles for compensation over the public highways of Virginia. The Southside Transportation Company has been operating for some years between Matoaca, Petersburg and Hopewell, Virginia, under certificate granted by the Commission. The Petersburg, Hopewell and City Point Transportation Company has been operating within the city of Hopewell under a franchise granted by the city, and holds a certificate of public convenience and necessity to operate motor vehicles between Hopewell and the Federal prison which has been suspended due to road conditions.

"The route after leaving the city of Petersburg, Virginia, for a distance of about one mile is over the Petersburg-Hopewell highway, which was at the time of the hearing, and is now, being operated over by the Southside Transportation Company, Incorporated. One mile from the corporate limits of the city of Petersburg this route diverges in a northeast direction over a country road to the Federal prison. Four miles of the route is within the Federal reservation.

"The evidence shows that the only need for this service is for the transportation of persons to and from the Federal prison, which has no common carrier transportation. The evidence does not disclose any residences or places of business along the route to be served. The terminal points

are the only places which need transportation. The evidence of witness Merry, Supervisor of Prison Camps, Bureau of Prisons, Department of Justice, Washington, D. C., stated that the government has a revocable lease from the War Department for Camp Lee reservation which includes 3,500 acres of land which was procured for the establishment of a prison camp to accommodate 600 inmates, and a personnel of approximately seventy-five. Mr. Merry stated that while the lease was revocable at the pleasure of the War Department, yet, he believed that it would be permanent. Mr. Merry also stated that the guards, clerks, medical and industrial officers are to a large extent married men, numbering as an average between seventy-five and eighty, for whom the department does not intend to erect quarters within the reservation, and that motor vehicle service is needed for these men, who reside largely in Petersburg, Virginia. In addition to the need of those employed at the prison for public transportation the evidence shows that people go to and from the Federal camp to see their relatives and friends.

"The Commission is of the opinion that the evidence justified its finding that the public convenience and necessity required motor vehicle service as asked for and granted by its order of the 12th day of March, 1931. After reaching the conclusion that the public convenience and necessity required the service proposed, it then became necessary for the Commission to determine which applicant should be granted the certificate."

The Federal prison is about seven miles from Petersburg and two and four-tenths miles from Hopewell, making the distance from Hopewell to Petersburg via the Federal prison approximately nine and one-half miles. The distance between these two cities over the road now used by petitioner is between seven and eight miles.

These two roads, from their point of divergence out of

Petersburg to the city of Hopewell, are about two and one-half miles apart on an average.

In our approach to cases of this character certain general principles may be regarded as established.

■ "Existing transportation systems should be protected so far as compatible with the public interest. There should be no unreasonable or unnecessary duplication of service, to the point that efficient service is made impossible. Subject to these limitations, when the public convenience and necessity require it, the certificate should be granted." *N. S. R. Co.* v. *Com.*, 141 Va. 179, 126 S. E. 82, 85.

"The only limitation on competition is that written into the motor vehicle law, chapter 161, Acts of the. General Assembly of Virginia 1923 (Extra Session) page 195. There, in section 3, new permits are forbidden when public convenience and necessity are already reasonably served. Public convenience is always the paramount consideration. For unnecessary duplication of transportation facilities, the public ultimately pays. 'Shoestring' competition, in the end, hurts everybody." *Petersburg, Hopewell and City Point Railway Company* v. *Commonwealth*, 152 Va. 193, 146 S. E. 292, 294, 67 A. L. R. 931.

In that case it was also said:

"After all, it is to be remembered that these matters are peculiarly within the province of the State Corporation Commission. Among its other duties, it was vested with the supervision of transportation by common carriers and vested also with wide discretion. Its judgments are presumed to be correct, and that presumption in this case has not been overborne."

■ The judgment of the State Corporation Commission must be regarded by us as *prima facie* just, reasonable and correct. Subsection (f), section 156, Const. of Virginia.

Laws governing motor vehicle transportation in Virginia are restated in a general act, approved March 25, 1930,

Acts 1930, chapter 419, page 893; Code 1930, sections 4097m *et seq*. Particularly pertinent to the issues here is subsection 1 of section 3.

█ From this statute and from our decided cases it appears to be the plain policy of the State to protect motor vehicle carriers, in territory already covered by them, from ruinous competition, subject, of course, to the paramount interest of the public. But this policy is not particularly helpful to us in the instant case and for this reason: The line proposed falls about as much within the territory of one of the applicants as of the other.

The Southside Transportation Company, as we have seen, covers the direct road from Petersburg to Hopewell and parallels an interurban trolley line running between these two cities. The Petersburg, Hopewell and City Point Transportation Company has a permit to operate between Hopewell and the Federal prison, although when this case was heard it had not then availed itself of that privilege because of road conditions. This the Commission recognized and by its permission the time within which operations should have begun had been extended for sixty days. These buses connect with this trolley line and so the Hopewell company already had through service from Petersburg to the prison. The matter was in the sound discretion of the Commission, whose judgment must be accepted as just and reasonable.

It is true that the statute gives to a certificate holder the right to furnish additional service over a route already occupied by it when such service is necessary. Both of these lines run for a mile out of Petersburg over the same road but the franchise given to the Hopewell company forbids its doing business along this duplicated line. And if it did not, this provision should be reasonably construed. A permit to operate buses between Norfolk and Bristol should not be denied because another company is already in service between Roanoke and Salem.

The Commission, after a comparison of the finances of these two rival companies, found against petitioner and was of opinion that its solvency is at least questionable.

These statements were furnished by it:

ASSETS AS OF DECEMBER 31, 1930.

| | | |
|---|---|---|
| Cash on hand | | $ 206.78 |
| Accounts receivable U. S. Government | | 2,586.56 |
| Equipment: | | |
| 5 Dodge buses | | |
| 2 Reo buses | | |
| 2 Fageol buses | $45,749.04 | |
| 1 Twin coach | | |
| 1 White | | |
| Less depreciation | 15,527.50 | 30,221.54 |
| Miscellaneous: | | |
| Tools, furniture and fixtures | | 771.81 |
| Prepaid rent | | 243.58 |
| Note: | | |
| Preferred stock Safety Transit Lines | | 16,900.00 |
| Inc., 8% Accumulative Accrued Int | $ 2,366.00 | |
| Franchise and Goodwill | | 25,000.00 |
| | | $76,530.27 |

LIABILITIES AS OF DECEMBER 31, 1930.

| | |
|---|---|
| Notes payable (not due) Virginia National Bank | $ 2,850.00 |
| Accounts payable on account buses | 13,224.01 |
| Accounts payable—Open accounts | 5,507.52 |
| Surplus | 29,948.74 |
| Capital stock | 25,000.00 |
| | $76,530.27 |

The item of $16,900.00 represents stock in a company in the hands of a receiver. The value of a franchise such as this, placed here at $25,000.00, is highly speculative, and practically valueless as an operating asset. The value of $30,221.54, placed upon buses, is, to say the least, liberal. Outstanding indebtedness amounts to something over $21,000.00. To pay this the company would have to sell its franchise or most of its equipment. Either would make further operation impossible unless it could borrow money, an act not easy in the face of this statement.

Mr. Sutherland, its secretary, testified that without taking into consideration depreciation "we are not making a whole lot of money but we are breaking even." Its chief source of profit had been through special contracts with the Federal government for carrying prisoners, and out of which it had made something like $1,000.00 a month. These con-

tracts expired on June 30, 1931, and might or might not be renewed. From all of this the Commission as of the date of its order of March 12, 1931, was justified in believing that solvency was doubtful. In support of this conclusion appears this pregnant fact. Over $4,000.00 was due for gas and oil which indicates difficulty in meeting current expenses.

█ The Hopewell company owes no debts. It has five buses, two of them new, one was bought in 1929, another is a second hand bus, while the fifth is of little value, so that this company is fairly equipped and out of debt, and while not strong, it meets its current bills and has a payroll of about $300.00 a month. In the light of these facts we cannot say that the Commission was plainly wrong in its judgment as to the financial responsibility of these two rival corporations.

Error has been assigned to the action of the Commission in dealing with the admissibility of evidence. Just what that action was appears in this excerpt.

"Q. Now, isn't it true that the reason for the organization of the Petersburg, Hopewell and City Point Transportation Company was merely to render a motor bus service which could not be rendered under the charter of the Petersburg, Hopewell and City Point Railway Company?

"Mr. Zimmer: I object to that question.

"Chairman: Objection sustained.

"Q. (By Mr. Shewmake) Will you tell the Commission, if you know, what reasons prompted the organization of this transportation company?

"Mr. Zimmer: I object to that question.

"Chairman: Objection sustained.

"Mr. Shewmake: We except to that.

"Q. Is the stock of the Street Railway Company worth anything today?

"Mr. Zimmer: We object to that.

"Chairman: Objection sustained."

■ These exceptions cannot be considered. There is nothing to show what the answers would have been and in the absence of this information we cannot say that they would have been material. *Owens* v. *Commonwealth,* 147 Va. 624, 136 S. E. 765.

The railway may have organized and may control this bus line. Petitioner and it are ancient enemies. In *Petersburg, etc., Ry. Co.* v. *Commonwealth, supra,* we affirmed an order of the State Corporation Commission which permitted the Southside Transportation Company to parallel with competitive bus service this interurban railway from Petersburg to Hopewell but that permission did not carry with it any unqualified right of monopoly. Because it put its nose under the tent it should not be permitted to preempt the premises.

The value of this railway stock could have only remote bearing upon the issue here. As we understand the argument for petitioner, it is that the bus line is but an instrumentality of the railway company, and that if the railway company should go into bankruptcy, and if its creditors sought to reach the assets of the bus company, they might succeed and thereby bring to pass its insolvency also. It is not necessary for us to inquire into this attenuated collateral possibility. Upon the authority of the *Owens Case* it is not before us.

■ By way of recapitulation, both of these corporations were operating in territory adjacent to the Federal prison and so certainly as between them the award was in the sound discretion of the State Corporation Commission.

While neither of them have any surplus financial resources, there is evidence to sustain the judgment of the Commission in favoring the Hopewell company.

There was no error in the rejection of evidence.

It follows that the order of the Commission must be affirmed.

*Affirmed.*