# Richmond

## VIRGINIA STAGE LINES, INC. v. COMMONWEALTH OF VIRGINIA, EX REL. &C.

June 10, 1946.

Record Nos. 3112, 3113.

Present, All the Justices.

The opinion states the case.

*John J. Wicker*, Jr., for the appellant.

*R. Paul Sanford*, for the appellees.

GREGORY, J., delivered the opinion of the court.

Record No. 3112 contains the application of F. A. Hubbard, trading as Boston Transit Company, for a certificate of public convenience and necessity to extend its bus service operations from Webb's Service Station (Now Midway Service Station) to Halifax, over route 501, a distance of 1.4 miles. This record also contains the evidence and orders of the State Corporation Commission.

Record No. 3113 contains the application of the Virginia Stage Lines, Inc., for a certificate to increase its existing ser-

vice between South Boston and Halifax to an additional sixteen trips per day.

These two applications were heard together upon the same evidence which is incorporated in record number 3112.

The application of F. A. Hubbard, trading as Boston Transit Company was resisted by the Virginia Stage Lines, Inc., upon the ground that it had held for ten years a certificate giving it the exclusive right to operate over route 501 from South Boston to Halifax and Halifax to South Boston, including the 1.4 miles in question; that if the service it rendered was inadequate it had the right under the statute (Code, sec. 4097y(6), (c)) to remedy such inadequacy before any certificate could be granted another, and that no such opportunity had been given it. The majority of the commission rejected this contention and granted a certificate to F. A. Hubbard, trading as Boston Transit Company, to operate his buses over the 1.4 miles, which, along with his present certificate, results in granting him the right to operate between South Boston and Halifax and return. The Virginia Stage Lines, Inc., in record number 3112, presents its appeal as a matter of right from the order of the commission.

The application of the Virginia Stage Lines, Inc., in record 3113 was resisted by F. A. Hubbard, trading as Boston Transit Company, on the ground that he already had the right to operate his buses over route 501, from South Boston to Webb's Service Station, and to grant the Virginia Stage Lines, Inc., a certificate to put into effect a schedule of sixteen additional trips a day over his route would be destructive of his right to operate under his certificate. The majority of the commission sustained the objection of Hubbard and denied the Virginia Stage Lines, Inc., the right to increase its service between South Boston and Halifax. It presents its appeal from the order of the commission as a matter of right and submits it in record 3113.

Since 1934, Virginia Stage Lines, Inc., has been the owner and operator of a bus line under a certificate of public

convenience and necessity issued by the State Corporation Commission of Virginia authorizing it to operate as a common carrier passenger buses between Lynchburg, Virginia, and the Virginia-North Carolina line, in both directions, over U. S. route No. 501, and as a part of its service under its certificate it has been operating as a common carrier between the two terminal points of South Boston and Halifax since 1934.

On January 22, 1945, J. J. Shaw was granted a certificate by the State Corporation Commission to operate various short routes out of and into South Boston. Included in the routes covered by this certificate were three and one-half miles on U. S. route 501, running northward from South Boston to Webb's Service Station. This was directly on the route between South Boston and Halifax which was included in the certificate granted the Virginia Stage Lines, Inc., in 1934, but it interposed no objection to the granting of the certificate to Shaw for the reason that Shaw represented that his purpose was merely to operate a suburban extension service from South Boston.

On October 16, 1945, Shaw transferred his certificate to F. A. Hubbard, trading as Boston Transit Company, and a few days thereafter Hubbard filed his application for an extension of the certificate so that he could operate his buses from Halifax to South Boston and South Boston to Halifax over route 501, and included in his certificate 1.4 additional miles.

On November 1, 1945, Virginia Stage Lines, Inc., instituted an enlarged schedule of twenty trips per day in each direction from South Boston to Halifax and Halifax to South Boston on the route authorized by its said certificate, operating substantially every hour. This was sixteen additional trips. However, it failed first to secure the approval of the State Corporation Commission to inaugurate the new schedules. Complaint was made by Hubbard to the commission and the commission directed the Virginia Stage Lines, Inc., to cease its enlarged schedule, with which order it promptly complied.

On November 3, 1945, Virginia Stage Lines, Inc., filed its application with the commission for permission, to enlarge its schedule, Hubbard interposed objection, and, as previously stated, the commission denied Virginia Stage Lines, Inc., the permission.

The cases, in our opinion, turn upon the proper construction of Code, sec. 4097y(6), (c), (d). The pertinent portion of the statute is as follows:

"Upon the filing of an application for a certificate of public convenience and necessity, the commission shall, within a reasonable time, fix a time and place of hearing of such application. If the commission shall find the proposed operation justified it shall issue a certificate to the applicant, subject to such terms, limitations and restrictions as the commission may deem proper. If the commission shall find the proposed operation not justified, the application shall be denied. No certificate shall be granted to an applicant proposing to operate over the route of any holder of a certificate when the public convenience and necessity with respect to such route is being adequately served by such certificate holder; and no certificate shall be granted to an applicant proposing to operate over the route of any holder of a certificate unless and until it shall be proved to the satisfaction of the commission that the service rendered by such certificate holder, over the said route, is inadequate to the public needs; and if the commission shall be of opinion that the service rendered by such certificate holder over the said route is in any respect inadequate to the public needs, such certificate holder shall be given reasonable time and opportunity to remedy such inadequacy before any certificate shall be granted to an applicant proposing to operate over such route.

"In determining whether the certificate required by sections 4097y(1) to 4097y(13m), shall be granted, the commission may among other things, consider the present transportation facilities over the proposed route of the applicant, the volume of traffic over such route, the financial condi-

tion of the applicant, and the condition of the highway over the proposed route or routes."

It seems to be conceded that additional service should be rendered between South Boston and Halifax, and Halifax and South Boston, because of additional population along the line, and the proposed location of certain industrial plants.

The statute, in very plain language, provides that no other certificate shall be granted another carrier where the route is being adequately served by the present certificate holder. If it be proved that the service rendered is inadequate, an opportunity first shall be afforded the existing certificate holder to remedy the inadequacy of service, and it is only upon his failure to remedy the service that the route can be opened to another carrier.

The uncontradicted evidence is that the Virginia Stage Lines, Inc., is in position to render the needed additional service, and that it is ready and willing to provide it. It is also uncontradicted that an opportunity to remedy any inadequacy that may exist in the service has not been afforded the Virginia Stage Lines, Inc., the existing certificate holder. Under the statute, until such an opportunity has been afforded the existing certificate holder, the State Corporation Commission has no power to issue another certificate over the same route.

The majority of the commission were of the opinion that it, in the exercise of its discretion in considering the peculiar facts of this case and applying the law, has the authority to grant more than one certificate over this same route or a portion of it because it deems the public interest, which is always paramount, requires it; that the commission has the authority to approve a part of a route held by another carrier and that here that part over which the second certificate is granted is only 1.4 miles. The majority of the commission reasoned in this manner:

"When it is remembered that the sole controversy is the extension of a local bus service 1.4 miles, the result of the commission's action can certainly not be considered as pro-

ducing undue or ruinous competition, but on the other
hand the action of the commission permits the establishment
of a well-rounded local bus service between and around
Halifax and South Boston, which is decidedly in the public
interest. The action of the commission in this instance is
not inconsistent with its policy throughout the years. The
commission has consistently granted certificates to carriers
who desire to do a purely local business from and to the
cities and towns in Virginia to the densely populated areas
closely adjacent thereto. Such operations are being con-
ducted in and around Richmond, Norfolk, Portsmouth,
Newport News, Lynchburg, Alexandria, Petersburg, Bristol,
Danville and Roanoke, all of such operations being daily
conducted over a part of the route of some other carrier.
If carriers operating within the cities and towns are not
permitted to extend their operations to the suburban terri-
tory, it will greatly retard the future development and ex-
pansion of the cities and towns, and most certainly will be
adverse to the economic and transportation needs of the
public."

The other view of the case was convincingly expressed
in a dissenting opinion by the Honorable Harvey B. Apper-
son, the third member of the commission. We think he
clearly answers the position of the majority. His view, in
our opinion, is not only in accord with the statute, but is
more logical and comes nearer attaining a more fair and just
disposition of the case. We adopt a portion of his opinion
as ours. It follows:

"Applying this statute to the instant case, it clearly ap-
pears that the Stage Lines holds a certificate covering the
entire route between South Boston and Halifax. As I read
the evidence, the proof does not show that the public con-
venience and necessity with respect to this route was not
being adequately served by the Stage Lines, the certificate
holder, unless it can be said that the prospective industrial
development near Halifax created a situation wherein addi-
tional service would be required. If, however, for the sake

of the discussion, it be assumed that this new development did require additional service, then under the specific and unequivocal language of the statute, the Stage Lines was entitled to have the opportunity to furnish any such needed service, and to remedy any inadequacy which might exist. This, the proof shows, it undertook and tried to do prior to the time that any attempt was made to force it to do so. The evidence shows that it, of its own initiative, tried to furnish sixteen additional trips per day, and if its adversary had not objected on the grounds that it desired to get on the remainder of the route, and furnish the same service which the Stage Lines had offered to furnish, it may be assumed that the service would have been inaugurated. The uncontradicted evidence shows the public wanted the additional service, the carrier desired to furnish it, and certainly the State Corporation Commission would not of its own motion have denied an existing carrier the right to furnish additional service, which it desired to give and which the public desired to have. It will be observed that there is nothing conditional or uncertain about this statute, but it in terms states that no other certificate shall be granted where the route is being adequately served by such certificate holder, unless it be proved that the service rendered is inadequate, and then in that event the opportunity shall be afforded to the existing certificate holder to remedy any inadequacy of service, before the route can be thrown open to another carrier who desires to operate thereon.

"The law on the subject is clear, specific and unequivocal, and it is my view that it was enacted by the General Assembly for the purpose of protecting the holders of existing certificates, and preventing undue and ruinous competition to them from those who sought to serve the same territory and thus deprive them of that which was theirs, rightfully acquired under a previously granted certificate.

"In construing the Virginia Motor Vehicle Law, the Supreme Court of this State has recognized it to be the definite policy of this 'State to protect existing transportation systems, so far as compatible with the public interest'. In

*Southside Transp. Co.* v. *Commonwealth*, 157 Va. 699, 161 S. E. 895, the court said:

" 'In our approach to cases of this character certain general principles may be regarded as established.

" 'Existing transportation systems should be protected so far as compatible with the public interest. There should be no unreasonable or unnecessary duplication of service, to the point that efficient service is made impossible. Subject to these limitations, when the public convenience and necessity require it, the certificate should be granted.' *Norfolk Southern R. Co.* v. *Commonwealth*, 141 Va. 179, 126 S. E. 82, 85.

" 'The only limitation on competition is that written into the motor vehicle law, chapter 161, Acts of the General Assembly of Virginia 1923 (Extra Session, page 195). There, in section 3, new permits are forbidden when public convenience and necessity are already reasonably served. Public convenience is always the paramount consideration. For unnecessary duplication of transportation facilities, the public ultimately pays. "Shoestring" competition, in the end, hurts everybody. *Petersburg, etc., Ry. Co.* v. *Commonwealth*, 152 Va. 193, 146 S. E. 292, 294, 67 A. L. R. 931.'

"That case was an appeal from a decision of the commission granting a certificate of public convenience and necessity to the Petersburg, Hopewell and City Point Transportation Company, authorizing the operation of passenger service between Petersburg and the Federal Prison, but containing a limitation that no passenger be taken on, or discharged on the Petersburg-Hopewell Highway now served by the Southside Transportation Company. Both of these companies had applied for the same franchise. The commission granted it to the Petersburg company with the limitation above mentioned, and denied the application of the Southside company.

"In commenting upon the Virginia Motor Vehicle Laws the court further said:

■ " 'From this statute and from our decided cases it appears to be the plain policy of the State to protect motor vehicle carriers, in territory already covered by them, from ruinous competition, subject, of course, to the paramount interest of the public. But this policy is not particularly helpful to us in the instant case and for this reason: The line proposed falls about as much within the territory of one of the applicants as of the other.'

"It will be observed that in that case the proposed line was in the territory of both applicants. However, both the commission and the Supreme Court recognized the principle that existing transportation systems should be protected, and included in the certificate granted the above referred to limitation. In speaking of this the court also recognized the fact that the statute gives to a certificate holder the right to furnish additional service over a route already occupied by it when such service is necessary, but it forbade the Hopewell company from doing business along this duplicated line.

"The law which gave an existing certificate holder the right to an opportunity to furnish additional service before such right should be given to another applicant, first appeared in the Motor Vehicle Law in 1926 (Acts 1926, page 920). This same safeguard, but in somewhat stronger language was re-enacted in 1932 (Acts 1932, page 700). The same provision in still stronger language was re-enacted by the General Assembly of 1936 (Acts 1936, page 230). All of which evidences a clear intention on the part of the General Assembly to make certain that an existing carrier must be given the opportunity to remedy any inadequacy of service before such rights are given to his adversary, and to make this assurance doubly sure by making each re-enactment in language stronger than the previous enactment.

"The principles enunciated in the *Southside Transp. Co. Case*, and those therein cited, have also been followed by the Supreme Court of Appeals in the case of *Turner* v. *Hicks*, 164 Va. 612, 180 S. E. 543, and again in the case of *Jessup* v. *Commonwealth*, 174 Va. 133, 5 S. E. (2d) 482. In that

case the only assigment of error was the refusal of the commission to remove from the certificate involved a restriction to the effect that no freight should be taken on at Richmond for delivery in Lynchburg, and no freight taken on at Lynchburg for delivery in Richmond. The commission was of the opinion that the then present transportation facilities, which were being afforded by the railroads, and motor transportation companies, which were then serving the territory, were adequate for the public needs and declined to remove the above mentioned restriction from the certificate under which the applicant had the right to operate between points on certain of the highways between Richmond and Lynchburg. Thus, again recognizing that the holders of existing certificates were entitled to protection. As I read the Virginia law on the subject, the Court of Appeals and the State Corporation Commission have strictly adhered to these principles. It is true that in the cases of *Norfolk Southern R. Co.* v. *Commonwealth*, 141 Va. 179, 126 S. E. 82, and *Petersburg, etc., Ry. Co.* v. *Commonwealth*, 152 Va. 193, 146 S. E. 292, 67 A. L. R. 931 (above cited in the *Southside Transp. Co. Case*), the commission granted certificates permitting motor vehicle carriers to parallel to some extent existing railway lines, and permitted the motor carriers to compete with the rail carriers. However, it appears from the decisions of the Court of Appeals, affirming the commission's decision that this was predicated largely upon the proof that transportation by motor vehicle afforded an additional and convenient mode of transportation, for which there was a public need, and which gave more convenient transportation to the public than was then being afforded by the rail carriers. Also in this connection it will be remembered that the General Assembly at the Special Session of 1923 (Acts 1923, page 195) provided that the operation of a railroad in the territory affected, should not prevent the granting of a certificate to a motor carrier, although the operations of the rail carrier would be paralleled. Similar provisions were carried in the Acts of 1924, page 330, and

Acts of 1926, page 920. The principle, however, that existing carriers were entitled to protection was recognized and reaffirmed. Applying these principles to the instant case, it should be argued with force that, since the Stage Lines was already serving the route between South Boston and Halifax, the application of the Transit Company might have been denied, on the sole ground that granting it would be contrary to the law laid down in the cases above referred to. However that may be, the other portions of subsection c, of section 6, of the Virginia Motor Vehicle Carriers Act, protects the Stage Lines in this case, by requiring that it be afforded an opportunity to remedy any inadequacy of service before the right to furnish service can be legally granted to its adversary, who is attempting to get on the route, and deprive it of the patronage which it had acquired by prior right.

"During the hearing of the case, it was contended by the Transit Company that it was already on a portion of the route from South Boston to Midway, and that, since the distance from Midway to Halifax was only 1.4 miles, this short distance should not prevent it from operating all the way between the two towns.

"It will be observed that the statute contains no exception as to the length of the proposed route, but on the contrary gives the existing certificate holder the right to serve it whether the distance be long or short, and further the right to an opportunity to remedy any inadequacy in existing service.

"The Transit Company introduced testimony to the effect that this proposed operation would be a convenience to those who would be employed as workers in the industrial plants near Halifax, which were in progress of construction, or in prospect. This contention was, in my opinion, adequately answered by reference to the provisions of [section] 4097y(2), (e), Code of Virginia, pursuant to which the Transit Company could transport these workers to and from their places of employment, without obtaining a cer-

tificate of public convenience and necessity over the route, which was then being served by an existing carrier. In addition the record is replete with offers on the part of the Stage Lines to furnish all of the service which the public convenience and necessity required. Not only did it ask this opportunity, but the uncontradicted evidence shows its desires and the diligent efforts it made when it sought to inaugurate the additional service by the proceedings in Case No. 8275.

"The exigencies of a particular case may present a situation justifying one carrier using a portion of the route of another for some purposes, but I fail to see why any such case is presented here. On the contrary I believe that an examination of the maps and the evidence which was introduced in these cases present a situation wherein one carrier by a series of proceedings involving various other routes, is attempting to establish a comprehensive transportation system in a locality, the result of which will deprive an existing transportation company of rights which it had previously acquired in a portion of the territory.

"While the activity of the Transit Company in furnishing additional transportation facilities to the people of Halifax County in the vicinity of South Boston and Halifax, is laudable, and it should be granted all of the rights to which it is entitled in this worthy endeavor, it should not be allowed to expand its operations to an extent which will deprive another transportation company of rights which it had already acquired to maintain its operations between these two towns. I am not impressed with the contention of the Transit Company that it has the right to operate over the routes of existing carriers in order to establish and maintain a coordinated system of transportation, which would be of great service to the public in this vicinity. It has the right to establish a coordinated system, provided that under the guise of coordination it does not deprive another carrier of its just and legal rights and privileges, which it had pre-

viously acquired, and has been enjoying for a number of years, during which it has given adequate service, so far as the evidence discloses. Certainly the Transit Company should not be allowed to coordinate its service in such manner as will deprive the Stage Lines of its rights without giving it an opportunity to remedy any inadequacy of service, as is provided by law. The attitude of the applicant, and the prime motive which actuates his desire to serve the route is rather forcibly demonstrated by the following excerpt from his testimony at pages 17 and 18 of the transcript:

" 'Q. Isn't it a fact that when the Virginia Stage Lines here recently started an increase of service, a more frequent service, you protested?

" 'A. Yes.

" 'Q. And filed an official protest with the State Corporation Commission?

" 'A. Yes.

" 'Q. And you are here stating to the commission that you believe the public between South Boston and Halifax on this direct route is in need of this additional service?

" 'A. Yes, sir.

" 'Q. Yet you don't want the public to have that additional service at the hands of the Virginia Stage Lines, the certificate holder, but only if you can get it. Isn't that correct?

" 'A. Just about.'

"Nor do I think that the position of the applicant is improved by the fact that he calls his application 'an extension of service under Certificate No. P-1520 (formerly P-1454)'. In fact his object is to furnish passenger bus service from South Boston to Halifax over the line of an existing carrier. He obtained the right to operate over the portion of 501 from South Boston to Midway under the circumstances above referred to. By denominating his application from Midway to Halifax as a mere extension of service and then by his protest and defense of Case No. 8275, preventing the Stage Lines from increasing its schedules, does not change

that which results, namely, the practical pre-emption of the route of an existing certificate holder."

We therefore reverse the orders of the commission and remand the cases to be disposed of in accordance with the views herein expressed.

*Reversed and remanded.*