## Staunton

CLINE MUNDY, T/A GENERAL MOTOR LINES v. WILLIAM
H. SHELOR, T/A FLOYD-ROANOKE FREIGHT LINE.

September 6, 1957.

Record No. 4688.

Present, All the Justices.

The opinion states the case.

*E. Griffith Dodson, Jr.* (*Dodson, Pence & Coulter*, on brief), for
the appellant.

No appearance and no brief filed for the appellee.

SNEAD, J., delivered the opinion of the court.

Cline Mundy, trading as General Motor Lines, who operates as a common carrier of freight over Highways Nos. 220 and 58 from Roanoke to Stuart via Martinsville appealed from an order entered September 12, 1956 by the State Corporation Commission. The order extended the certificate of public convenience and necessity No. F-563 held by William H. Shelor, trading as Floyd-Roanoke Freight Line, who also operates from Roanoke to Stuart, but over Highways Nos. 221 and 8, via Floyd and Woolwine, to authorize the delivery of freight to Easthampton Rubber Thread Company situated on Highway No. 58 about 1½ miles east of Stuart, as an off route point.

The following sketch will serve to illustrate their respective routes.

The questions presented are whether the laws of this Commonwealth authorize the Commission to grant Shelor the right to deliver freight to Easthampton on the route of Mundy as an "off route point" or "occasional deviation", and if so whether the evidence adduced before the Commission justified the exercise of this authority.

The plant of Easthampton Rubber Thread Company, a subsidiary of United Elastic Corporation, was being constructed and the completion date was set for January, 1957. United has a plant at Woolwine and another at Stuart. Shelor had been hauling freight in a satisfactory manner for United from Roanoke to its plants at Woolwine and Stuart, and also for Easthampton from Roanoke to Stuart. It was the desire of United and Easthampton for Shelor to render freight service to Easthampton at its plant about 1½ miles east of Stuart on Highway No. 58.

Upon their request, Shelor made application to the Commission for a restricted common carrier certificate to deliver freight to Easthampton and pick up outgoing freight from the plant and deliver it to connecting carriers at Roanoke. On September 5, 1956 a hearing was had on the application, at which time Shelor withdrew his request for authority to pick up outgoing freight.

John Helms, plant manager of Easthampton, and former purchasing agent of United, testified that he had requested the routing of a majority of the machinery and supplies for the plant through Shelor, because he gave more prompt service than Mundy did; that it was necessary to send Easthampton's trucks to Stuart to pick up freight delivered by Shelor; that if Shelor was permitted to make delivery at the plant, it would be a distinct advantage to Easthampton; that most of the supplies used for construction were purchased in Roanoke and when ordered they would be delivered by Shelor in Stuart the next day, and that his only complaint in regard to Easthampton service was that on one occasion Mundy took fifteen days to make delivery of a shipment of pipe.

He further stated that when manufacturing starts Easthampton would use approximately 100,000 pounds of raw materials a month, as well as necessary parts and supplies incidental to the plant's operations, which would be delivered through Roanoke; that the bulk of raw materials would be purchased in several northern states from 25 or more suppliers; that Mundy had contacted him in regard to rendering freight service to the plant, and that the trucking services of

Shelor and Mundy were not needed for outgoing freight.

Carson Wilson, personnel manager of United at its Stuart and Woolwine plants, said that most of United's suppliers in Roanoke shipped through Shelor; that when an order was placed in Roanoke, Shelor would make delivery the next day, whereas Mundy would take two or three days longer. When asked on cross examination to specify when a shipment took several days to be delivered, he said "I can only say the past year, from hearing it discussed there. That is common knowledge." Commissioner Catterall then inquired if he had more than one example. He replied that the only incident he could recall was when word was left three times for Mundy to pick up a shipment which he failed to do, and it was rerouted through Shelor. On cross examination he stated that the switchboard operator called Patrick Hardware Company, but he did not know whether Patrick Hardware had relayed the message to Mundy. Commissioner Hooker asked the witness if better service wasn't his main concern, and his response was in the affirmative.

Robert Clarke, a member of the Town Council of Stuart and also a merchant and contractor, related that he had had shipping experience with both Shelor and Mundy; that Shelor gave better and quicker service from Roanoke; that it took Mundy close to 30 days to transfer a spring order of paint for him from Martinsville to Stuart, and that he was constructing the new plant of Easthampton.

The evidence of Cline Mundy, who opposed the granting of Shelor's application, was to the effect that freight on his trucks moved from Roanoke to Martinsville on one day and then was delivered in Stuart the following day; that he had the capacity to move freight to Easthampton and was anxious for the business; that the pipe shipment referred to by Helms was a "rough shipment" and there was a delay of eleven days after receiving notification; that he was not informed as to the shipment of paint mentioned by Clarke, and that only one complaint about his service had been registered with him and that was by Helms concerning one shipment.

Shelor did not file with this court a brief and no oral argument was heard on his behalf. We have before us the record and Mundy's brief for our consideration.

A part of the Commission's written opinion follows:

"* * * The Commission is of the opinion that a restricted common carrier certificate as applied for should not be granted, but that the applicant should be permitted to serve this plant as an occasional

deviation to a point off of his certificated route, solely for the purpose of delivering freight picked up in Roanoke. This limited authority will permit the Easthampton Rubber Thread Company to receive the service desired without real detriment to the rights of the objector."

For its authority to grant common carriers a right to serve off route points from their routes for which they hold certificates, § 56-283, Code 1950 was quoted, which provides:

"A common carrier by motor vehicle, or a restricted common carrier by motor vehicle, operating under a certificate issued by the Commission may occasionally deviate from the route over which it is authorized to operate under the certificate, under such general or special rules and regulations as the Commission may prescribe."

The order entered by the Commission provides as follows:

"This matter came on September 5, 1956, to be heard and the Commission being of the opinion from the evidence that the applicant should be granted authority to serve the Easthampton Rubber Thread Company on U. S. Highway No. 58 approximately one and one-half miles east of Stuart, Virginia;

"IT IS ORDERED, That the certificate of public convenience and necessity No. F-563 held by William H. Shelor be extended to authorize the delivery of property by motor vehicle to the plant of the Easthampton Rubber Thread Company on U. S. Highway No. 58 approximately one and one-half miles east of Stuart, Virginia, as an off route point."

Mundy contends that the hauling of approximately 100,000 pounds of raw materials a month, and in addition thereto supplies and parts necessary to keep the plant in operation, cannot be considered an "occasional deviation" and that the Commission's holding that it would be an "occasional deviation" in effect favors one competitor over another and is contrary to the intent of the General Assembly.

We think there is merit in his contention. The record is silent as to how many different shipments there would be each month, but it is reasonable to infer that the hauling each month of approximately 100,000 pounds of raw materials received from 25 or more suppliers plus supplies and parts to keep the plant in running condition would require a number of separate shipments and constitute frequent deviations rather than an "occasional deviation", which is not provided for by § 56-283, Code 1950.

The opinion recited that Mundy opposed the application on the

ground that he should be permitted to have Easthampton's freight transferred to him at Stuart and from there delivered by him to the plant (1½ miles). According to the Commission, the revenue for this service is *de minimis*. But Mundy urges upon us that there was a misconception on the part of the Commission as to his objection. He asserts that the extension of Shelor's certificate deprives him not only of revenue for hauling from Stuart to Easthampton, but deprives him of his favorable position to move the freight from Roanoke to Easthampton. He further maintains that it puts him to an economic disadvantage in being bound by law as a common carrier to haul freight *from* the plant while Shelor may haul *to* the plant without any legal obligation to move outgoing freight from the plant. It appears to us that the potential loss of revenue may be more than *de minimis*.

In *Southside Transp. Co.* v. *Commonwealth*, 157 Va. 699, 705, 161 S. E. 895, we said:

"* * * [I]t appears to be the plain policy of the State to protect motor vehicle carriers, in territory already covered by them, from ruinous competition, subject, of course, to the paramount interest of the public." This principle was quoted with approval in *Virginia Stage Lines* v. *Commonwealth*, 185 Va. 390, 38 S. E. 2d 576.

Both Shelor and Mundy have the same terminii, Roanoke and Stuart. Easthampton is on Mundy's certificated route, but not on the certificated route of Shelor. Unless the paramount interest of the public is involved Shelor should not be permitted to render service on Mundy's route, where the service amounts to more than an "occasional deviation".

Mundy further complains that the Commission exceeded its authority in extending Shelor's certificate of public convenience and necessity without giving him reasonable time and opportunity to remedy any inadequacy in his service, if such inadequacy existed. He relies upon § 56-281, Code 1950 which provides:

"No certificate shall be granted to an applicant proposing to operate over the route of any holder of a certificate unless and until it shall be proved to the satisfaction of the Commission that the service rendered by such certificate holder, over such route, is inadequate to the requirements of the public necessity and convenience; and if the Commission shall be of opinion that the service rendered by such certificate holder over such route is in any respect inadequate to the requirements of the public necessity and convenience, such certifi-

cate holder shall be given reasonable time and opportunity to remedy such inadequacy before any certificate shall be granted to an applicant proposing to operate over such route." See *Virginia Stage Lines* v. *Commonwealth, supra.*

The Commission did not find as a fact in either its opinion or order that Mundy's service was inadequate, but there is evidence that it could be improved.

A certificate of public convenience and necessity was not granted Shelor to render service to Easthampton and the opinion so states. However, the order complained of had the same effect for it extended Shelor's original certificate of public convenience and necessity to permit the delivery of freight to Easthampton. We think the extension of this certificate comes within the purview of § 56-281. Mundy was entitled to an opportunity and reasonable time to correct any inadequacy in service, which was not offered him, before Shelor's certificate of public convenience and necessity was extended.

For the reasons stated, we reverse the order of the Commission and remand the case to be disposed of in accordance with the views herein expressed.

*Reversed and remanded.*