# Richmond

VIRGINIA STAGE LINES, INC. v. COMMONWEALTH OF VIRGINIA.

November 24, 1947.

Record No. 3186.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and
Staples, JJ.

The opinion states the case.

*John J. Wicker, Jr.*, for the appellant.

*Oscar L. Shewmake*, for the appellee.

SPRATLEY, J., delivered the opinion of the court.

Virginia Stage Lines, Inc., a Virginia corporation, is the holder of numerous certificates of public convenience and necessity issued by the State Corporation Commission of Virginia, authorizing the transportation of passengers as a common carrier over various routes specified in the said certificates, particularly over U. S. Highway No. 29 from the Virginia-District of Columbia boundary line to Charlottesville; thence over Virginia Highway No. 613 from Charlottesville to Scottsville; thence via Virginia Highway No. 20 and U. S. Highways No. 15 and No. 460 to Farmville; and also via Virginia Highway No. 49 from Clarksville to Virgilina, a point on the Virginia-North Carolina boundary line.

On September 8, 1945, Virginia Stage Lines, Inc., filed with the State Corporation Commission its application under chapter 129, Acts of Assembly 1936, Virginia Code, 1942 (Michie), section 4097y(6), sometimes referred to as the Virginia Motor Vehicle Carrier Act of 1936, as amended, for a certificate of public convenience and necessity as a common carrier on the following route:

"From Farmville, Virginia, to Clarksville, Virginia, over U. S. Highway 15, serving all intermediate points and return over same route. No passengers transported whose origin is Keysville and destination Barnes Junction and/or intermediate points between such points or the reverse. Passengers will be transported whose origin is Keysville or Barnes Junction or intermediate points when destined to points beyond Keysville or Barnes Junction in either direction or the reverse."

All preliminary steps necessary to mature the application were properly taken and the case heard on October 3, 1945.

The Atlantic Greyhound Corporation appeared at the hearing and interposed the following objections to the granting of the said application:

"1. The operation proposed by the Applicant cannot be justified on grounds of public convenience and necessity.

"2. The public convenience and necessity over the route which the Applicant proposes to operate between Keysville and Barnes Junction is now being adequately served by the present certificate holder, Atlantic Greyhound Corporation.

"3. The granting of the certificate applied for would constitute an act of grave injustice to Atlantic Greyhound Corporation and would be in direct contravention of subsection (c) of Section 6 of Chapter 129 of the Acts of the General Assembly, 1936."

The Atlantic Greyhound Corporation is a Virginia corporation, and the holder of numerous certificates issued by the State Corporation Commission of Virginia, authorizing the transportation of passengers as a common carrier over various routes specified in the said certificates, particularly over U. S. Highway No. 360 from Richmond to Danville, by way of Burkeville, Keysville, Barnes Junction and South Boston, and via U. S. Highway No. 58 from Danville to Norfolk, by way of Clarksville, South Hill, Emporia and Suffolk.

Virginia Stage Lines, Inc., will hereinafter be referred to as Stage Lines; Atlantic Greyhound Corporation as Greyhound; and the State Corporation Commission as the Commission.

The following rough sketch will illustrate the location of the routes and highways involved:

Virginia Stage Lines Inc. v. Commonwealth

Route #460, over which Greyhound has a certificate.

Route #15, over which Va. Stage Lines, Inc. proposes to operate.

Connecting route over which Va. Stage Lines has certificates.

The application of Stage Lines was for a restricted certificate on a route from Farmville to Clarksville over U. S. Highway No. 15, a distance of approximately 56 miles. Eighteen miles of this route, the distance between Keysville and Barnes Junction constitutes a part of U. S. Highway No. 360, as well as a part of U. S. Highway No. 15. The fact that these 18 miles were included in the route applied for by Stage Lines and were also included as part of a route held under a certificate by Greyhound on Highway No. 360 from Richmond to Danville brought on this controversy.

At the hearing before the Commission, a large number of witnesses testified in favor of the application of Virginia Stage Lines, and emphasized the existence of the public convenience and necessity for its proposed operation.

At the time of the application of Stage Lines, there was no bus operated from Farmville to Keysville, or from Barnes Junction to Clarksville. There was no direct service between Virgilina and Charlottesville to Farmville and Clarksville, or intermediate points, on Route 15.

Stage Lines renders most of its bus service in the northern central part of Virginia, north of Charlottesville. It also operates from points in North Carolina, northward to Charlottesville over U. S. Highways Nos. 501 and 29. The route applied for makes a connecting link between its lines in Virginia and North Carolina with its line running from Charlottesville to Washington on Highway No. 29. If granted, it would enable Stage Lines to render through service from the North Carolina line to Washington, D. C., and also serve intermediate points. Time, distance, and cost of travel would be much reduced for passengers travelling between Farmville and Clarksville and all points north and south.

Greyhound renders most of the passengers bus service in what may be called the southeast portion of Virginia, south of Richmond and as far west as Danville. It maintains its northern terminal at Richmond, jointly with the Richmond-Greyhound Lines, a separate corporation. At this

terminal passengers travelling north or south may transfer from one carrier to the other.

According to the State Highway map, Charlottesville is approximately 70 miles from Richmond, and Danville approximately 40 miles from Virgilina.

Greyhound contended that there was no public convenience and necessity for the proposed line between Farmville and Clarksville. It appeared that Greyhound had formerly held a certificate from June 13, 1934, until 1941, authorizing the transportation of passengers between Farmville and Keysville, over U. S. Highway No. 15. The operation was unprofitable, and was discontinued with the permission of the Commission.

Stage Lines contended that it did not propose to operate over any route on which Greyhound held a certificate, but on an entirely different route.

After the hearing, briefs were presented, and the final or reply brief of Stage Lines was filed on April 27, 1946.

On June 11, 1946, the day after the opinion of this court was rendered in the case of *Virginia Stage Lines* v. *Commonwealth*, 185 Va. 390, 38 S. E. (2d) 576, Greyhound presented its application for a certificate over the same route applied for by Stage Lines. On June 12, 1946, nine months after the case had been matured and the evidence taken, the Commission, Commissioner Hooker not participating in the hearing or the decision, entered an order denying the application of Stage Lines. The order assigned no reason for the denial.

In its written opinion, subsequently filed, supporting its order, the Commission said:

"The first question to be decided is whether or not the proposed operation is justified; that is to say, whether or not the public convenience and necessity in the area sought to be served requires the service applied for. We are of the opinion that the record in this case amply demonstrates a need for the service proposed to be rendered and, therefore, we have found the proposed operation to be justified. Once

this is determined we must then make inquiry to find whether or not the proposed route is over the route of the holder of certificate of public convenience and necessity from this Commission and if such is the case, such certificate holder must be given reasonable time and opportunity to render the service found to be necessary."

It then was said that the determination of that inquiry depended upon the construction of the language of section 6, (c), chapter 129, Acts of 1936, Virginia Code, 1942 (Michie), section 4097y(6), (c).

Subsections (c) and (d) of section 6 of that Act read as follows:

"(c) Upon the filing of an application for a certificate of public convenience and necessity, the commission shall, within a reasonable time, fix a time and place of hearing of such application. If the commission shall find the proposed operation justified it shall issue a certificate to the applicant, subject to such terms, limitations and restrictions as the commission may deem proper. If the commission shall find the proposed operation not justified, the application shall be denied. No certificate shall be granted to an applicant proposing to operate over the route of any holder of a certificate when the public convenience and necessity with respect to such route is being adequately served by such certificate holder; and no certificate shall be granted to an applicant proposing to operate over the route of any holder of a certificate unless and until it shall be proved to the satisfaction of the commission that the service rendered by such certificate holder, over the said route, is inadequate to the public needs; and if the commission shall be of opinion that the service rendered by such certificate holder over the said route is in any respect inadequate to the public needs, such certificate holder shall be given reasonable time and opportunity to remedy such inadequacy before any certificate shall be granted to an applicant proposing to operate over such route.

"(d) In determining whether the certificate required by

this act shall be granted the commission may among other things, consider the present transportation facilities over the proposed route of the applicant, the volume of traffic over such route, the financial condition of the applicant, and the condition of the highway over the proposed route or routes."

The Commission held that the application of Stage Lines constituted an attempt to invade the "territory" served by Greyhound, and that in view of the decisions of this court and the declared public policy of this State with respect to the granting of certificates, authorizing the transportation of passengers by motor vehicle carriers, the word "route" used in the statute was employed by the legislature interchangeably with the word "territory." The opinion then further declared that inasmuch as Greyhound had declared its willingness to perform the service and had made application for a certificate in furtherance of its declaration, its application should be granted upon maturity. It then set out that the application of Greyhound had been set for hearing on July 17, 1946, on which day it had been fully heard and certificate had been granted to Greyhound.

The issue presented to us is brought within a narrow compass. There are no questions of fact involved.

It is conceded by the parties, and found by the Commission, that both Stage Lines and Greyhound are experienced and capable common carrier passenger motor bus operators with ample resources, and that public convenience and necessity for the motor bus operation covered by the application of Stage Lines have been duly established.

The public policy of the State as to duplication of such service is not in question. That policy established both by statute and by decisions of this court is to grant to a common carrier by motor vehicle the exclusive right to transport passengers over a specified route from specified termini, and then strictly regulate the exercise of that right in the public interest, protecting the carrier meanwhile, so far as compatible with the public interest, against ruinous competition from other carriers. The public interests are paramount and controlling; but the rights of owners of

certificates must not be disregarded. The convenience and necessity of the entire public affected must always be considered. *Southside Transp. Co.* v. *Commonwealth*, 157 Va. 699, 161 S. E. 895; *Turner* v. *Hicks*, 164 Va. 612, 180 S. E. 543; *Jessup* v. *Commonwealth*, 174 Va. 133, 5 S. E. (2d) 482; and *Virginia Stage Lines* v. *Commonwealth*, 185 Va. 390, 38 S. E. (2d) 576.

The issue before us is one of the correct construction of the language of section 6, (c) of Chapter 129, Acts of 1936, particularly the meaning of the word "route," found in that statute.

Stage Lines rests its case upon the proper definition of that word. In its brief, this is said:

"If the word 'route' found in section 6, (c) of the Virginia Motor Carrier Act is to be interpreted and applied as if it were synonymous with the word 'territory' and the word 'highway,' then the decision of the Commission was correct and should be upheld. But on the other hand, if the recognized rules of statutory construction are to be applied, and if the General Assembly is to be assumed to have meant what it said when it discarded the word 'territory' and substituted therefor the word 'route' then the Commission's decision was based upon an erroneous construction of the law and should, accordingly, be reversed."

It follows, under the circumstances, that if the application of Stage Lines proposes an operation over the "route" over which Greyhound holds a certificate, and Greyhound is willing to remedy any inadequacy of public service, the latter should be given reasonable time and opportunity to prove its ability to do so. On the other hand, if the "route" from Farmville to Clarksville over U. S. Highway No. 15 is a "route" different from the "route" allotted to Greyhound from Richmond to Danville over U. S. Highway No. 360, notwithstanding the fact that 18 miles between Keysville and Barnes Junction constitute the same strip of roadway on both U. S. Highways, then the "route" applied for by Stage Lines is not over the "route" for which Greyhound holds a certificate.

Prior to the amendment of 1932, Acts 1932, chapter 359, the granting of a certificate "to operate in a territory already served by a certificate holder" was dependent upon the manner in which the "territory" was being served by the certificate holder. By the amendments of 1926, Acts 1926, chapter 551, and 1930, Acts 1930, chapter. 419, it was provided that an existing certificate holder should be allowed a reasonable time and opportunity to furnish any additional service that might be needed over his "route" before a new applicant should be granted a certificate. The Act of 1932 employs both of the words "route" and "territory," and provides for the service of notice of the hearing of an application upon every certificated carrier operating "in the territory" proposed to be served by the applicant. The Act of 1936, a revision of the Motor Vehicle Carrier Act, omitted altogether the word "territory" in dealing with the granting and refusal of certificates of convenience and necessity. There was substituted in its place and stead the narrower and more precise word "route."

 In Webster's New International Dictionary (2d Ed.), Unabridged, "route" is defined as: "the course or way which is or is to be travelled or pursued; a course; road; path; march." "Territory" is defined as: "a large estate or tract of land; a region, a district."

██ A "route" is a direction of travel from one place to another. It may be over one or more named or numbered highways or paths. A "highway" is a road of travel, and may be a portion of one or more different routes. When numbered or named as a highway running from one point to another, it becomes a route. That the two words "route" and "highway" are not synonymous is shown by the separate use of the two words in the Act of 1936, section 6, (d). There it is provided that the Commission should consider, among other things, "the present transportation facilities of the proposed *route* of the applicant, the volume of travel over such *route* * * * and the condition of the *highway* of the proposed *route* or *routes*." (Italics supplied).

This seems to indicate rather clearly the legislative understanding of the difference in the meaning of the words.

Carriers are not certificated to operate in a certain "territory," but over a designated "route." The "route", that is, the road to be travelled, serves the "region," "district," or "territory" adjacent to it. The words "territory" and "route" are not synonymous in general meaning. In the context in which they were used in the statutes mentioned, relating to motor vehicle carriers, prior to 1936, there was justification for holding them interchangeable to effect the purposes declared. But, in the revision of the statutes in 1936, it is highly significant that the word "territory" was eliminated in connection with the subject under discussion. The area of the protection afforded a certificate holder was confined to his specific "route," rather than to an indefinite area described as "territory."

The official State Highway map of Virginia, in evidence, discloses that the same strips on many of the State highways constitute portions of two or more numbered highways, and are consequently portions of two or more different routes connecting entirely different places. It is not denied that motor vehicle certificate holders, in numerous instances, operate over one and the same highway constituting a part of different routes.

*Jessup* v. *Commonwealth, supra; Virginia Stage Lines* v. *Commonwealth, supra;* and *Reynolds Transp. Co.* v. *Public Service Comm.*, 125 W. Va. 690, 26 S. E. (2d) 519, are relied on to support the order of the Commission.

The only issue before the court in the *Jessup Case, supra,* was the existence of public necessity and convenience for the operation applied for,—an issue addressed to the sound discretion of the Corporation Commission.

In *Virginia Stage Lines* v. *Commonwealth, supra,* the facts were different from those here. There Stage Lines was the existing certificate holder from Halifax to South Boston, on Highway No. 501. It was held that the Commission erroneously granted a certificate to an applicant to operate between the two identical towns or terminals, on

exactly the same route on Highway No. 501, without first giving Stage Lines an opportunity to remedy any inadequacy of service thereon.

The case of *Reynolds Transp. Co.* v. *Public Service Commission, supra,* involved the right of an applicant to secure a certificate to operate as a common carrier on a route beween Parsons and Elkins, both in West Virginia, over U. S. Highway No. 219, when exactly the same route and the same highway between the two points was covered by a certificate already issued to another. In reversing an order of the Public Service Commission granting the certificate applied for, the Supreme Court of West Virginia referred to the statute law of that State, which differs in its language and provisions from the corresponding statute of this State.

In the case before us, the undisputed facts are wholly different. Here we have one carrier operating a route on Highway No. 360 from Richmond to Danville. Another carrier proposes to operate a route on Highway No. 15 from Farmville to Clarksville. The routes lie between totally different terminal points, and the only relation between them is the fact that they occupy the same highway or roadway for a few miles through a distinctly agricultural community.

Cases decided prior to the revision of the statute in 1936 are no longer authority on the specific issue before us. Cases from other courts are dependent upon the particular statutes therein involved. This is the first time the precise question in issue here has been presented to this court.

For the reasons stated, we are of opinion that the Commission erred in its construction of the language of section 6, (c) of chapter 129, Acts of 1936. Having found that the operation proposed by Stage Lines was justified on the grounds of public convenience and necessity, the interest of the public in such operation was paramount. While the public policy is to protect a carrier from ruinous competition, it does not go to the extent of protection from all

competition. It would naturally be a great convenience for traffic on Highway No. 15 from Virgilina to Charlottesville to have a direct line of travel north and south, as well as intermediate points. The restriction in the application of Stage Lines protected Greyhound from competition as to certain local travel between Keysville and Barnes Junction, over whose connecting highway Greyhound operated. A traversing of the same highway for certain distances by competing carriers may readily become necessary in the public interest, and in such an instance more than one certificate may be granted, subject to just and proper restrictions against the subsequent and additional operations.

It may be well to review the salient facts and proceedings from the beginning of this case to the filing of the opinion of the Commission.

Greyhound stoutly contended throughout the hearing that the public convenience and necessity did not require the service proposed between Farmville and Clarksville. It had abandoned the certificate it held authorizing transportation of passengers between Farmville and Keysville over Highway No. 15. However, in its brief filed with the Commission, it stated that it was ready, willing and able to furnish such service as the Commission might find necessary and convenient to the public need.

The Commission did not confine its holding merely to the distance between Keysville and Barnes Junction, and allow Greyhound the opportunity to remedy the inadequacy of its service between those two points. In a separate proceeding, designated as Case No. 8488, it subsequently granted the application of Greyhound to operate between Farmville and Clarksville, different terminals on a longer route, and a route on which Greyhound was not an existing certificate holder, save as to a portion of the highway included thereon.

Greyhound did not file its application for a certificate over the same route as applied for by Stage Lines until

June 11, 1946. This was, as we have stated, more than nine months after the hearing on Stage Lines' application, and exactly one day before the order was entered denying the application of Stage Lines.

It is fair to assume that the decision upon which the order was based had been reached before the application of Greyhound had been filed, although the written opinion of the Commission, giving the reasons for its denial, was not filed until after it had heard and granted Greyhound's application, reference to which grant was made in the opinion. The Commission said:

"In view of the language of the court decisions hereinbefore quoted and it appearing that the Legislature and our Court of Appeals have used the term "territory" interchangeably with the term 'route', when such was deemed necessary and advisable to foster the policy of the Commonwealth to protect existing carriers, as aforesaid, we are of the opinion that Greyhound should be afforded the opportunity to render the service found to be necessary."

The conclusion of the Commission is thus, directly and solely, based upon its erroneous construction of the language of section 6, (c), chapter 129, Acts of 1936.

In our opinion, the operation applied for by Stage Lines is not contrary to the public policy of the State. While Greyhound may anticipate some competition by reason of the proposed operation by Stage Lines, the paramount interest of established public convenience and necessity outweigh any objection on the ground of competition.

We do not think that the legislature intended to confine the effects of the statutes involved within the narrow limits prescribed by the Commission in this case. Under a proper construction of the statute, with the public convenience and necessity fully established for passenger motor bus operation between Farmville and Clarksville, and with the capacity of Stage Lines to adequately serve the public need being conceded, by reason of its experience, resources, and established connecting routes, there were sufficient grounds to

justify the granting of a certificate to Stage Lines to operate over the route applied for, subject to the restrictions in its application.

In *Southside Transp. Co. v. Commonwealth, supra,* we said this: "A permit to operate between Norfolk and Bristol should not be denied because another company is already in service between Roanoke and Salem."

For all the foregoing reasons, we are of opinion to reverse the order of the Commission and remand the case for further proceedings, in accordance with the views expressed.

*Reversed and remanded.*