# Staunton

## O. C. WILEY & SONS, INC. v. COMMONWEALTH OF VIRGINIA, EX REL.

September 7, 1949.

Record No. 3535.

Present, Hudgins, C. J., and Gregory, Buchanan, Staples and Miller, JJ.

The opinion states the case.

*W. G. Burnette*, for the appellant.

*John J. Wicker, Jr., Paul M. Shuford, Lucian H. Cocke, Jr., Richard T. Wilson, Jr., Oscar L. Shewmake, John C. Goddin* and *Felix E. Edmunds,* for the appellees.

MILLER, J., delivered the opinion of the court.

The application of O. C. Wiley and Sons, Inc., appellant, to the State Corporation Commission of Virginia, for a certificate of public convenience and necessity to operate as an intrastate common carrier of property over irregular routes between various counties, cities, and towns throughout Virginia was dismissed without prejudice on October 25, 1948, by an order and judgment of the Commission. The application was opposed by Brooks Transportation Company, Inc., Old Dominion Freight Lines, Norfolk and Western Railway Company, and numerous other interested rail and highway common carriers, who will be hereinafter referred to as appellees.

Several assignments of error are made to the order and judgment, but, in our opinion, the ultimate and decisive question is whether the character of certificate applied for— *i. e.*, to operate as an intrastate common carrier by motor vehicle of property (commodities generally) over irregular routes throughout the State—is authorized by law and susceptible of award by the State Corporation Commission.

Appellant's application states that "applicant desires authority, which no other carrier in Virginia has, to transport property over irregular routes, as a common carrier by motor vehicle * * *" and that "Reasonable service will be

rendered to meet the needs of the shipping public. The time schedule will conform to the wishes of the shipping public. A more definite time schedule cannot be given as the operation will be over irregular routes as distinguished from operation over designated routes." It contends that it is entitled to a certificate allowing it to "run over all the roads in Virginia" and on "any and all highways without specifying any particular one."

It thus appears that appellant desires a certificate authorizing it to operate as a free lance common carrier anywhere within and throughout Virginia, limited only by the sufficiency of the roads and bridges in the State Highway System to accommodate and sustain its equipment.

Appellants assert that such a certificate is permissible and provided for by the Virginia Motor Carrier's Act. Appellees contend to the contrary.

The Act, under which certificates of public convenience and necessity are granted by the State Corporation Commission, appears as Chap. 161A, sec. 4097 (m), et seq., Code, 1942 (Michie), and the 1948 Supplement thereto.

To understand the question presented, it is necessary to set forth in full certain pertinent sections of the Act and material parts of other sections.

Section 4097y(l) is wholly devoted to definitions and its subsections e, f, g, k and l, read, in part:

"(e) The term 'common carrier by motor vehicle,' means any person who or which undertakes, * * * to transport passengers or property for the general public by motor vehicle for compensation over the public highways of the State, whether over regular or irregular routes, * * *.

"(f) The term 'restricted common carrier by motor vehicle' means any person who or which undertakes, * * *, to transport passengers or property of any restricted class or classes by motor vehicle for compensation, whether over regular or irregular routes.

"(g) The term 'contract carrier by motor vehicle' means any person, not included under paragraphs (e) and (f) of this section, who or which, under special or individual con-

tracts or agreements, * * *, transports property by motor vehicle for compensation.

"(k) The term 'certificate' means a certificate of public convenience and necessity issued by the commission to common carriers by motor vehicle and restricted common carriers by motor vehicle under sections 4097 (l) to 4097y(13m).

"(l) The term 'permit' means a permit issued by the commission to contract carriers by motor vehicle, special or charter party operators, or to operators of taxicabs or other vehicles performing taxicab service under sections 4097y(l) to 4097y(13m)."

Section 4097y(4) places the duty and power of supervision, regulation and control over common carriers by motor vehicle in the State Corporation Commission.

The procedure, circumstances and conditions under which a common carrier by motor vehicle may be granted a certificate of public convenience and necessity evidencing its right and authority to transport passengers or property in Virginia are set forth in detail by section 4097y(6) of the Act. The material subsections of it read:

"(a) No common carrier by motor vehicle or restricted common carrier by motor vehicle not herein exempted shall engage in intrastate operation on any highway within the State without first having obtained from the commission a certificate of public convenience and necessity authorizing such operation, and a statement of the State highway commission that the law applicable to the proposed route or routes has been complied with as to size, weight, and type of vehicles to be used, * * *."

"(c) Upon the filing of an application for a certificate of public convenience and necessity, the commission, shall, within a reasonable time, fix a time and place of hearing of such application. If the commission shall find the proposed operation justified, it shall issue a certificate to the applicant, subject to such terms, limitations and restrictions as the commission may deem proper. If the commission shall find the proposed operation not justified, the application shall be denied. No certificate shall be granted to an applicant pro-

posing to operate over the route of any holder of a certificate when the public convenience and necessity with respect to such route is being adequately served by such certificate holder; and no certificate shall be granted to an applicant proposing to operate over the route of any holder of a certificate unless and until it shall be proved to the satisfaction of the commission that the service rendered by such certificate holder, over the said route is inadequate to the public needs; * * *.

"(d) In determining whether the certificate required by this Act shall be granted the commission may among other things, consider the present transportation facilities over the proposed route of the applicant, the volume of traffic over such route, the financial condition of the applicant, and the condition of the highway over the proposed route or routes.

"(e) A common carrier by motor vehicle, or a restricted common carrier by motor vehicle, operating under a certificate issued by the commission may occasionally deviate from the route over which it is authorized to operate under the certificate, under such general or special rules and regulations as the commission may prescribe."

Section 4097y(8) has to do with the operation of common carriers or restricted common carriers over their designated routes. It is as follows:

"The commission may by a written order authorize the transportation of both passengers and property in the same vehicle; provided, that the route over which such transportation is proposed is not being served by any other common carrier, and that the service is at least two miles from the route served by any such carrier."

In no place in the entire Act, which authorizes the operation of intrastate common carriers by motor vehicle and provides for the issuance of the certificate of authority so to do, are the words or phrase "irregular routes" used except in section 4097y(1), which is solely devoted to definitions of words and terms.

Our attention is called to the fact that under the Federal statute, the Interstate Commerce Commission is empowered

to issue certificates to motor carriers engaged in interstate transportation of property to operate over irregular routes, as well as fixed and regular routes, and under the West Virginia statute, the Public Service Commission of that State enjoys like authority with regard to the issuance of certificates for intrastate operation of motor vehicles transporting property or passengers.

The definition of the term "common carrier by motor vehicle", as it appears in the Interstate Commerce Act, and in the West Virginia Act, dealing with transportation in interstate commerce, in the one instance, and in intrastate in the other, are very similar to that contained in section 4097y-(1) of the Virginia Code. See sec. 303, paragraph 14, U. S. C. A., Title 49, Ch. 8, Interstate Commerce Act, Part II, and Ch. 24A, sec. 2577(2), Code of West Virginia, 1943.

Operation of motor vehicles engaged in interstate transportation of property over an irregular route is recognized and permitted under the Federal statute, and the right to engage in intrastate transportation of property over an irregular route is likewise recognized and permitted by the West Virginia statute. Since the definition of the term "common carrier by motor vehicle" in those two statutes is practically the same as in the Virginia Act, appellant argues that a certificate of public convenience and necessity for operation over irregular routes is by necessary implication authorized and permitted by our Act.

In so contending, appellant loses sight of the fact that the authority conferred upon the Interstate Commerce Commission under the Federal statute, and the Public Service Commission under the West Virginia Act, to issue certificates for operation over irregular routes, is not given under and by virtue of the sections in the respective acts which define the term "common carrier by motor vehicle." That authority emanates from other provisions of the statutes.

Section 308 (a) of the Federal Act provides that the certificate issued the carrier for operation over a regular route shall specify "the routes over which, the fixed termini, if any, between which" it shall render service, *"and in case*

of operation not over specified routes or between fixed termini, the territory within which, the motor carrier is authorized to operate."

When this section is read in connection with sections 306 and 307 of the Act, which actually provide for the issuance of certificates to the common carrier, it is evident that the statute contemplates and by language sufficiently clear and direct authorizes the issuance of certificates for the carriage of property which are not limited to specified routes, but also contemplates operation within a specified territory. Upon fair interpretation and construction, the language of the statute amply justifies the conclusion that operation over irregular routes is contemplated and permitted.

Chapters 17 and 24A of the Code of West Virginia, 1943, deal with and permit the issuance of certificates of public necessity and convenience to motor vehicle carriers in that State. Sections of those respective chapters other than the section defining words and terms are fully as liberal and inclusive as the Federal act and allow the operation of common carriers by motor vehicle over both regular and irregular routes. *McKee* v. *Public Service Comm.*, 124 W. Va. 10, 18 S. E. (2d) 577.

No such broad language or authority is found in the Virginia Act. Nor can the right to operate over "irregular routes" be implied solely from the use of that term in the section defining a common carrier by motor vehicle. The clear language of other parts of the Act expressly negatives any such construction.

Appellant asserts that there is no reason for the use of the term "irregular routes" in the section on definitions unless operation over routes of that character is contemplated by the Act. A sufficient answer to that contention is that merely defining a term does not grant a right which would be in clear and obvious conflict with other specific provisions of the Act.

However, the fact that the Interstate Commerce Commission grants certificates to motor carriers engaged in interstate carriage of property to operate over "irregular routes"

within a specified territory as well as over "regular routes" was and is ample justification for the inclusion of each within the definition. Had such carriers over irregular routes been omitted from the definition, an implication would have arisen that they were not to be deemed common carriers merely because they operated over irregular routes, though they were actually engaged in common carriage of property. It was therefore reasonable and proper that the definition of what constitutes a "common carrier by motor vehicle" include those operating over regular or irregular routes under certificates granted by either State or Federal agencies.

■ The broad and unlimited authority to operate at will contended for by appellant could and most probably would create detrimental and destructive competition with other intrastate motor vehicle carriers operating over regular routes. The grant of such extensive rights would, in our opinion, contravene the public policy evident in the Act to prevent duplication of routes and to strictly limit and regulate competition between carriers which the Act discloses is deemed to be in the public interest.

That there should not be ruinous competition between certificate holders by operating over the same route appears from the terms of the Act and is confirmed by the recent decision of *Virginia Stage Lines* v. *Commonwealth*, 186 Va. 1066, 45 S. E. (2d) 318, wherein it is said:

"Carriers are not certificated to operate in a certain 'territory', but over a designated 'route'. The 'route', that is, the road to be travelled, serves the 'region', 'district', or 'territory' adjacent to it. The words 'territory' and 'route' are not synonymous in general meaning. In the context in which they were used in the statutes mentioned, relating to motor vehicle carriers, prior to 1936, there was justification for holding them interchangeable to effect the purposes declared. But, in the revision of the statutes in 1936, it is highly significant that the word 'territory' was eliminated in connection with the subject under discussion. The area of the protection afforded a certificate holder was

confined to his specific 'route', rather than to an indefinite area described as 'territory'." (186 Va. at p. 1077.)

And at p. 1074, we find:

"The public policy of the State as to duplication of such service is not in question. That policy established both by statute and by decisions of this court is to grant to a common carrier by motor vehicle the exclusive right to transport passengers over a specified route from specified termini, and then strictly regulate the exercise of that right in the public interest, protecting the carrier meanwhile, so far as compatible with the public interest, against ruinous competition from other carriers. The public interests are paramount and controlling; but the rights of the owners of certificates must not be disregarded. The convenience and necessity of the entire public affected must always be considered."

The opinion in *Virginia Stage Lines* v. *Commonwealth*, 185 Va. 390, 38 S. E. (2d) 576, we also think recognizes that a certificate to operate over an irregular route adjacent to and through territory adequately served by a regular route certificate holder could easily create destructive and ruinous competition to the carrier limited to the regular route. It clearly indicates that the Virginia Motor Carrier's Act does not contemplate the issuance of a certificate of public necessity and convenience to a motor vehicle carrier of either passengers or property to operate over irregular routes. Pertinent paragraphs of that opinion, which adopts in part the opinion of the late Honorable Harvey B. Apperson of the State Corporation Commision, are:

"It will be observed that there is nothing conditional or uncertain about this statute, but it in terms states that no other certificate shall be granted where the route is being adequately served by such certificate holder, unless it be proved that the service rendered is inadequate, and then in that event the opportunity shall be afforded to the existing certificate holder to remedy any inadequacy of service before the route can be thrown open to another carrier who desires to operate thereon.

"The law on the subject is clear, specific, and unequivocal,

and it is my view that it was enacted by the General Assembly for the purpose of protecting the holders of existing certificates, and preventing undue and ruinous competition with them from those who sought to serve the same territory, and thus deprive them of that which was theirs, rightfully acquired under a previously granted certificate." (185 Va. at p. 397.)

We conclude that the certificate applied for by appellant is not contemplated or permitted under the Motor Vehicle Carrier's Act. It necessarily follows that there was no error in the order entered by the State Corporation Commission and it is accordingly affirmed.

*Affirmed.*