# Richmond

## FRANK L. COOK TRANSFER AND GREYVAN STORAGE OF VIRGINIA v. COMMONWEALTH OF VIRGINIA.

October 11, 1954.

Record No. 4262.

Present, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Shewmake, Gary, Goddin & Blackwell, Oscar L. Shew-make* and *John C. Goddin,* for the appellants.

*J. Lindsay Almond, Jr., Attorney General* and *Frederick T. Gray, Assistant Attorney General,* for the Commonwealth.

WHITTLE, J., delivered the opinion of the court.

This case is before us upon appeal of right from two orders entered by the State Corporation Commission.

Frank L. Cook Transfer held Household Goods Carrier Certificate No. HG-144, issued by the Commission on January 18, 1952, pursuant to § 56-338.11, Code of Virginia, 1950. The certificate reads:

"Frank L. Cook Transfer, Covington, Virginia, having been found qualified and agreeing to comply with the laws of this Commonwealth and with the rules and regulations of the State Corporation Commission lawfully applicable thereto, in accordance with Chapter 532 of the Acts of General Assembly of 1948, is hereby granted a Certificate of Convenience and Necessity to operate motor vehicles as a Household Goods Carrier on the highways of this Commonwealth."

Cook attempted to sell the certificate to Greyvan Storage of Virginia, whose principal office was located in Richmond. The application for the transfer of the certificate was filed with the Commission in accordance with the provisions of Code, § 56-338.14. It is conceded that the prescribed procedure for the sale and transfer of the certificate was complied with. The Commission ordered a hearing on the application

for the transfer, and on August 3, 1953, entered its order, the relevant part of which reads:

"It is further ordered, that a *new certificate* of convenience and necessity for the transportation of household goods by motor vehicle between *Covington* and all points in Virginia be issued to Greyvan Storage of Virginia and that Certificate No. HG-144 be cancelled upon the issuance of a new certificate." (Italics supplied)

Both Cook and Greyvan objected to the issuance of the "new certificate" which materially altered—by creating Covington as the point of origin and destination—the provisions of Certificate No. HG-144 sought to be transferred. Whereupon, on August 11, 1953, the Commission entered a further order to the effect that as Greyvan would not accept the tendered new certificate the transfer was rescinded and the application dismissed.

Appellants, Cook and Greyvan, contend that the unlimited certificate No. HG-144, having been duly issued to Cook, the same should be transferred to Greyvan; that the Commission had no authority under the law to issue a new certificate confining Greyvan's operations to "* * * the transportation of household goods by motor vehicle *between Covington* and all points in Virginia * * *". (Italics supplied) The Commission, on the other hand, held that it had a right to issue the new certificate in place of Certificate No. HG-144, and that it had a right to restrict the operations of Greyvan, the would-be transferee, as contemplated in its order of August 3, 1953.

The statute here involved, governing "Household Goods Carriers", was enacted at the 1948 session of the General Assembly. See Chapter 532, page 1089, Acts of Assembly, 1948. This chapter is codified in the 1950 Code of Virginia in §§ 56-338.1 through 56-338.18. The chapter deals exclusively with "Household Goods Carriers" and is restricted entirely to such carriers as are defined in § 56-338.1, subsection (e), which reads:

" 'Household Goods Carriers' means any person who or which undertakes whether directly or by a lease or other arrangement, to transport 'household goods', as hereinafter defined, by motor vehicle for compensation, on any highway in this State, between two or more points in this State, whether over regular or irregular routes."

The cargoes which may be hauled by "Household Goods Carriers" are specified in subsection (f) of § 56-338.1, and are limited, in part, to "* * * personal effects and property used or to be used in a dwelling when a part of the equipment or supply of such dwelling * * *".

In Virginia three classes of motor carriers must operate under authority of certificates of convenience and necessity issued by the Commission, *viz*: (1) common carriers by motor vehicle; (2) household goods carriers; and (3) petroleum tank truck carriers.

The certification of common carriers is provided for in § 56-273, *et seq.* of the Virginia Code, 1950. Such carriers operate over specified routes, between fixed *termini* and under published schedules. See *Virginia Stage Lines* v. *Commonwealth*, 186 Va. 1066, 45 S. E. (2d) 318; *Wiley & Sons* v. *Commonwealth*, 189 Va. 982, 55 S. E. (2d) 44.

The certification of petroleum tank truck carriers is provided for in Code, §§ 56-338.19, *et seq.*, and § 56-338.26 provides in part that "* * * Such certificate shall authorize the holder to engage in the business of a petroleum tank truck carrier, as herein defined, over regular and irregular routes *between points* within this State * * *." (Italics supplied) Upon application for a certificate filed by a proposed petroleum tank truck carrier § 56-338.29 provides that at the hearing the Commission may consider, among other things, the public safety, the character of traffic on the applicant's proposed route or routes, "and the condition of the highways involved". In this instance the legislature contemplated that the petroleum carrier would operate over authorized routes, receiving his load from the supplier of petroleum products and hauling it over such routes to the trade.

No such restrictive provisions appear in the Household Goods Carriers Act. Section 56-338.8 of the Code reads:

"*Necessity of Certificate; authority conferred.*—No person, not herein exempted, shall engage in motor vehicle transportation of household goods, as herein defined, for compensation on any highway within the State, unless and until he has obtained from the Commission a certificate of public convenience and necessity as a household goods carrier. Such certificate shall authorize the holder to engage in the business of a household goods carrier, as herein defined, over regular and irregular routes between *all points* within this State and * * * on *all of the highways* of this State." (Italics supplied)

It is held by the Commission in its written opinion which has been adopted by the Commonwealth as the major part of its brief, that this clear provision as to the scope of the certificate is qualified by § 56-338.11, authorizing the initial issuance of a certificate. Since this section provides in part, "* * * If the Commission shall find the proposed operation justified by public convenience and necessity, it shall issue a certificate to the applicant, subject to such terms, limitations and restrictions as the Commission may deem proper. * * *", it is argued that the Commission can place in an original certificate any reasonable "limitations and restrictions" it deems proper, including a restriction as to point of origin. It is further contended that as § 56-338.14, which authorizes the transfer of a certificate, provides "any such certificate may be transferred or leased subject to the approval of the Commission, and under such reasonable rules and regulations as may be prescribed by the Commission", that the two sections read together impliedly give the Commission the right to issue a new certificate to a transferee and to place reasonable limitations and restrictions therein which were not incorporated in the original certificate. We cannot agree with either conclusion.

Certificate No. HG-144, which Cook attempted to have transferred to Greyvan, provided without any restriction or limitation that he "* * * is hereby granted a certificate * * *

to operate motor vehicles as a Household Goods Carrier on the highways of this Commonwealth". It was admitted in argument at bar that there was no restriction or limitation in the Cook certificate, and furthermore, that under its terms Cook would be free to establish headquarters at any place in Virginia and operate his business in accordance with the rights and privileges accorded by Certificate No. HG-144. There was no "point of origin" designated in the Cook certificate. The Act, as we have shown, does not require a point of origin to be specified therein and, in our opinion, no such designation is contemplated by the Act. The Commission is not concerned with the route or routes to be employed by household goods carriers. The legislature has specified that "such certificate shall authorize the holder to engage in the business * * * between *all points* within this State and * * * on *all* of the highways of this State." (Italics supplied)

The Commonwealth also asserts that "the power thus granted to the Commission to approve or disapprove a transfer includes the power to approve a transfer subject to such terms, limitations and restrictions as the Commission may deem proper". We do not agree with this conclusion. Section 56-338.14, which provides that "*any such certificate* may be transferred or leased *subject to the approval* of the Commission, and under such reasonable *rules* and *regulations* as may be prescribed by the Commission", gives the Commission no arbitrary power to refuse to transfer "any such certificate" if its "reasonable rules and regulations" have been complied with.

In compliance with § 56-338.14 the Commission adopted Rule 2, relative to the sale and transfer of certificates, which reads:

"No certificate shall be sold, transferred, or assigned until notice as required by Rule 1 is properly made, or served, and a public hearing shall be had at which a satisfactory showing is made to the Commission that such purchaser, transferee or assignee can and will comply with all of the provisions of the laws relating to his operation * * *."

It will be seen that all that is required by this rule is that "a satisfactory showing is made to the Commission that such purchaser, transferee or assignee can and will comply with all of the provisions of the laws relating to his operation * * *."

It is conceded that Rule 2 has been complied with, and this is the only rule or regulation applicable here.

It was suggested that when Cook applied for the certificate he established "the need of that service at Covington"; that Cook at the time was a one-truck operator with headquarters at Covington, and it was intimated that the Commission had this limited operation in mind when the certificate was issued; that it did not have in mind that Cook or his transferee would become a multi-truck operator and move headquarters to some city already amply served by household goods carriers.

We cannot here consider what the Commission had in mind when it issued Certificate No. HG-144. The Commission speaks through its orders, and there are no limitations or restrictions in the order granting this certificate.

When Cook applied for the certificate, the transfer of which is here in question, subsection (c) of § 56-338.2 of the Code was in effect. This subsection specifically excepted from the provisions of the Act carriers of household goods "between any points wholly within the limits of any city or town in this State, or for any lesser distance than fifteen miles". And subsection (d) of the same section exempted the "occasional or infrequent transportation of household goods outside the limits of any city or town for a greater distance than fifteen miles". With these exemptions in the Act it would hardly have been necessary for Cook to apply for a certificate to render service limited to the citizens of Covington or within fifteen miles of Covington. He could, without a certificate, service the inhabitants of Covington and could "occasionally or infrequently" transport household goods to any part of Virginia.

It is stated in the opinion of the Commission that "we base * * * [our] construction not only on the literal wording of the statute but also on the obvious purpose of the statute

to prevent unrestricted competition in this business * * *."
We find nothing in the statute to suggest that its major pur-
pose is to prevent competition. The statute is liberal and is
apparently ordained to permit reasonable competition. As
aforesaid, § 56-338.8 authorizes the holder of a certificate to
operate its business "between all points within this State and
* * * on all of the highways of this State."

The Commission's opinion further asserts: "If Grey-
van is right in the position it takes, it has found such a big
loophole in the law that what is left of the law is smaller than
the loophole." Here the Commission reasons that an applicant
in any remote section of the State could apply for a certificate
under the Act, basing his application upon the public con-
venience and necessity of his locality, and after he had re-
ceived his certificate he could sell the same to a would-be
operator in a metropolitan area where this character of service
is over-crowded, thus causing destructive competition and
confusion. Even in such an envisioned dilemma it would not
be the function of this court nor is it the function of the
Commission to fill the "loophole". Neither the court nor the
Commission is authorized to enact laws—this function is dele-
gated to the legislature. The Commission, under the Act, is
charged with the duty of administering and enforcing its pro-
visions to the extent provided in § 56-338.16 of the Code,
which deals with "Rates and traffic classifications; regulations,
forms and reports".

As heretofore shown, there are no "terms, limitations and
restrictions" to be found in the certificate sought to be trans-
ferred. The Code section providing for the transfer of a
certificate [§ 56-338.14] refers to "any such certificate", not
an altered or amended certificate, and not a "new" certificate.
The statute in this instance contemplates the transfer of
Certificate No. HG-144. The provision of the section
[56-338.14], "subject to the approval of the Commission,
and under such reasonable rules and regulations as may be
prescribed by the Commission", simply means that the statute
applicable to the transfer and the reasonable rules and regula-

tions promulgated by the Commission must be complied with.

The nature of the business transacted by a household goods carrier and the wording of the Act negative the Commission's right to specify a point of origin as was done in the instant case. As stated, the Act provides that such carrier may operate between *all points* in this State and over *all* of the highways of the State. Such phraseology does not contemplate a point of origin. If it be mandatory that a point of origin be required, it would be necessary for every hamlet in Virginia to have a certificated household goods carrier located therein, with the hamlet designated as the point of origin. Even this would not answer the needs of citizens living in remote rural sections; such citizens would have no choice except to use the services of unregulated carriers who "occasionally or infrequently" engage in the transportation of household goods and are exempted from the operation of the Act under subsection (d) of § 56-338.2, *supra*.

The record in this case, however, shows that the transferee is both willing and able to render service in and out of Covington as may be necessary, and to render all such other service as is authorized under the Cook certificate. The Commission, under its supervisory power granted by § 56-338.4, may require the transferee to perform its duties.

The Commission was in error in its refusal to enter an order transferring the certificate. Therefore the orders entered by the Commission on August 3, 1953 and August 11, 1953, are reversed and annulled, and the case is remanded to the Commission for the entry of a final order in accordance with the principles here expressed.

*Reversed and remanded.*