# Richmond

WILSON TRUCKING CORPORATION v. COMMONWEALTH OF VIRGINIA, ET AL.

December 2, 1963.

Record No. 5677.

Present, All the Justices.

The opinion states the case.

*John C. Goddin* (*Calvin F. Major; Shewmake, Gary, Goddin & Blackwell*, on brief), for the appellant.

*D. Gardiner Tyler, Assistant Attorney General* (*Robert Y. Button, Attorney General; William C. Seibert*, on brief), for the Commonwealth.

*John W. Pearsall* (*Simpkins, McCaul & Pearsall*, on brief), for Hemingway Transport of Virginia, Inc.

CARRICO, J., delivered the opinion of the court.

Wilson Trucking Corporation filed a petition with the State Corporation Commission praying for a determination of its rights with respect to certain certificates of public convenience and necessity issued to Wilson by the Commission in 1953.

In the petition, Wilson alleged that one of its certificates (No. F-645) authorized it to furnish common carrier freight service between Roanoke and Waynesboro and that another certificate (No. F-646) authorized it to render such service between Lynchburg and Waynesboro.

It was Wilson's contention that by "tacking" together the rights granted by these two certificates, it was authorized to render service between Lynchburg and Roanoke, by way of Waynesboro. Wilson's petition sought the Commission's recognition of this authority. This alleged right had been challenged by the Commission's Commerce Counsel because of a limitation in Certificate No. F-646.

Following this challenge, Wilson filed its petition. Hemingway Transport of Virginia, one of the appellees, which furnishes common carrier freight service between Richmond, Lynchburg and Roanoke, was permitted to intervene in the proceedings in opposition to the relief sought by Wilson.

After a hearing, the Commission entered an order denying Wilson's petition and, in a unanimous opinion, set forth the reasons for such denial. Wilson is here on an appeal of right.

A sketch, showing the cities and routes involved in this controversy, is here reproduced.

The record before us discloses that in 1953, Wilson and Richmond-Harrisonburg Freight Line, Incorporated, filed a joint application with the Commission seeking approval of the transfer to Wilson

of 29 certificates of public convenience and necessity held by Richmond-Harrisonburg. A hearing was held on the application and an order was entered by the Commission which provided, in part, as follows:

"IT IS ORDERED that the said transfer be, and the same is hereby, approved;

"IT IS FURTHER ORDERED that new certificates be issued to Wilson Trucking Corporation covering the service authorized by the certificates transferred herein as follows:

"One certificate covering service authorized under Certificates Nos. F-511, F-495, F-494, F-498, F-512 and F-445;

"One certificate covering service authorized under Certificates Nos. F-393, F-540, F-543, F-542, F-539, F-546, F-480, F-497 and F-458; and

"One certificate for each of the remaining certificates, viz: F-513, F-541, F-481, F-545, F-484, F-496, F-544, F-380, F-420, F-538, F-453, F-519, F-526, F-535;

"IT IS FURTHER ORDERED that all of the certificates of Richmond-Harrisonburg Freight Line, Incorporated, transferred herein be cancelled upon the issuance of said new certificates."

Pursuant to this order, the Commission issued three new certificates to Wilson in place of the 29 certificates formerly held by Richmond-Harrisonburg. The old certificates were cancelled. No objection was raised to this procedure by Wilson and no complaint was registered as to the contents of the new certificates.

Certificate No. F-458, referred to in the order, and which became a part of new Certificate No. F-646, authorized, in part, service between Lynchburg and Waynesboro, without limitation with respect to the controversy before us. The rights conferred by this certificate were originally granted, in 1927, to L. G. Straughan, and thence passed by subsequent transfers to Richmond-Harrisonburg.

Certificate No. F-511, referred to in the order, and which became a part of new Certificate No. F-645, authorized, in part, service between Roanoke and Waynesboro, without limitation with respect to this controversy. The rights covered by this certificate were originally granted, on August 25, 1936, to Harry G. Mundy, and thence passed by subsequent transfers to Richmond-Harrisonburg.

Certificate No. F-480 referred to in the order, and which became a part of new Certificate No. F-646, authorized service between

Charlottesville and Roanoke, via U. S. Highways 29 and 460. The rights conferred by this certificate were originally granted, on September 19, 1936, to Settle's Van & Freight Service, and thence passed by subsequent transfers to Richmond-Harrisonburg. This certificate contained the limitation which is the basis of the present dispute. The limitation was included in new Certificate No. F-646 in the following language:

"No freight shall be accepted at Lynchburg or any point between Lynchburg and Roanoke for transportation to Roanoke or any point between Lynchburg and Roanoke, and vice versa (Cert. F-480)."

The question to be decided is whether Wilson has the authority to accept freight in Roanoke for transportation to Lynchburg, via Waynesboro, and to accept freight in Lynchburg for transportation to Roanoke, via Waynesboro.

It is Wilson's position that since Richmond-Harrisonburg was authorized under old Certificate No. F-458 to render service between Lynchburg and Waynesboro and under old Certificate No. F-511 to render service between Roanoke and Waynesboro, without limitation upon either certificate, Richmond-Harrisonburg then had the right to transport freight from Lynchburg to Roanoke, via Waynesboro, and vice versa; that the limitation in old Certificate No. F-480 applied only to service between Lynchburg and Roanoke, via Route 460, and not to service between these two cities, via Waynesboro; that Wilson succeeded to the same rights with respect to service between Lynchburg and Roanoke, subject only to the limitation regarding haulage over Route 460 and that the limitation in new Certificate No. F-646 was intended only to have the same effect.

The Commission said, in its written opinion, that in transferring the old certificates to Wilson in 1953, the Commission continued the limitation that no traffic could be handled between Lynchburg and Roanoke in order to protect the interests of Brooks Transportation Company, the predecessor of Hemingway, which held the right to operate between Lynchburg and Roanoke over Route 460. The opinion pointed out that the distance between Lynchburg and Roanoke, via Route 460, is 53 miles and via Waynesboro is 148 miles.

The opinion further stated that, "Wilson has never had authority to transport between Roanoke and Lynchburg. The granting of its petition would permit Wilson, for the first time, to transport freight legally between these cities. Even though Wilson could not operate over highway 460, it could operate between Roanoke and Lynchburg via Waynesboro in competition with Hemingway."

The opinion also stated that there was no evidence before the Commission showing a public need to remove the limitation or that the service being rendered by Hemingway was inadequate; that Wilson merely contended that some ambiguity or mistake existed in the Commission's action when it issued the new certificates in 1953. The opinion concluded by saying that there was nothing before the Commission to justify a modification of the 1953 order and that it had no legal right, after the long lapse of time, to change the limitation in Certificate No. F-646, even if a mistake had been made in placing the limitation thereon.

We agree with the views expressed in the Commission's opinion.

There is no need, nor are we free, to determine what rights Richmond-Harrisonburg might have had to operate between Lynchburg and Roanoke, via Waynesboro. Richmond-Harrisonburg's certificates were cancelled as the result of the 1953 order, and life cannot now be restored to them. The crucial questions is, what rights and what limitations were included in Wilson's certificates?

Wilson accepted, without objection, new Certificate No. F-646 which granted it the right to transport freight between Lynchburg and Waynesboro over routes 29, 6 and 151. But imposed upon that right was the limitation, in language free and clear of ambiguity, that no freight could be accepted at Lynchburg for transportation to Roanoke and that no freight could be accepted at Roanoke for transportation to Lynchburg. The effect of the rights granted and of the limitation imposed was that while highways 29, 6 and 151 could be used for the transportation of freight moving between Lynchburg and Waynesboro, those same highways could not be used for freight originating in Lynchburg for delivery in Roanoke, and vice versa. The limitation was co-extensive with the right. The obligation to observe the limitation was imposed by Wilson's acceptance of the right.

Wilson contends, however, that the Commission was without authority to impose the limitation in Certificate No. F-646, relying on our holding in *Cook Transfer* v. *Commonwealth*, 196 Va. 384, 83 S. E. 2d 733. Wilson says that the limitation in Certificate No. F-646 was a new restriction imposed at the time of the 1953 action and that the rule in the *Cook* case bars the Commission from imposing new restrictions upon the transfer of certificates of public convenience and necessity.

In the *Cook* case, we held that upon the transfer of a certificate, originally issued to a carrier of household goods without restriction

as to point of origin, the Commission was without authority to order the issuance of a new certificate designating such a point of origin.

The *Cook* case cannot be determinative of the issue before us. The issuance of the original Cook certificate and the transfer proceedings were controlled by the provisions of Code, §§ 56-338.1 to 56-338.18, relating to carriers of household goods. Those statutes did not require a point of origin to be specified in the certificate and did not permit the Commission to designate such a point when approving the transfer of a certificate.

We are concerned here with different statutes, having different provisions and relating to a different type of carrier. Motor vehicle carriers are regulated by Code, §§ 56-273 to 56-338. These statutes contemplate that upon the issuance of a certificate of public convenience and necessity, specific routes and fixed termini shall be designated. The transfer of such a certificate is made, by the terms of Code, § 56-298, "subject to the approval of the Commission."

Whether, under the motor vehicle carrier statutes, the Commission has authority, in approving a transfer, to impose new or different restrictions, we need not decide. Wilson, unlike the transferee in the *Cook* case, did not object to the issuance of new certificates, did not challenge the authority of the Commission to include the limitation in Certificate No. F-646, and did not take an appeal from the Commission's actions.

Wilson cannot, at this late date, complain that in 1953 the Commission lacked authority when Wilson did not then challenge the exercise of that authority, did not then refuse to accept the new certificate and did not timely perfect an appeal.

But, Wilson contends, the Commission did not intend, and Wilson did not understand, that the limitation in the new certificate should be applicable except as to operations over route 460, between Lynchburg and Roanoke. For proof of this assertion, Wilson says that its predecessors had for many years hauled freight between Lynchburg and Roanoke, via Waynesboro, and that Wilson continued to do so after 1953 until challenged, in 1962, by the Commission.

This contention is without merit. The intention of the Commission with respect to the limitation is expressed in clear language in the certificate and, moreover, the same commissioner who presided over the 1953 hearing and who signed Certificate No. F-646 wrote the opinion in the present case. That opinion forcefully shows that

the Commission intended to restrict not only route 460 but the route between Lynchburg and Roanoke, via Waynesboro, as well.

Furthermore, there is no proof in the record that Wilson or its predecessors transported freight from Lynchburg to Roanoke, via Waynesboro, and vice versa, or that if such action took place, that either the Commission or Hemingway had knowledge thereof prior to the Commission's challenge of Wilson in 1962. Wilson says that it alleged in its petition that such operations had continued for almost a quarter of a century, that this allegation was not denied and, therefore, stands as proof of the facts alleged. But Wilson's petition was merely *ex parte*, there were no parties-respondent and no one was called upon to deny its allegations. At the hearing, one of the commissioners and counsel for Hemingway called upon Wilson for such proof but it was not forthcoming. Wilson did not then contend that the allegations of its petition were sufficient for this purpose.

Finally, Wilson contends that the 1953 transfer order of the Commission contained no limitations, that the order is controlling and that there is, therefore, no restriction on Wilson's right to transport Roanoke and Lynchburg freight, via Waynesboro.

The 1953 order, and the certificates issued pursuant thereto, must be read together to determine what rights Wilson received and, by the same token, what restrictions were placed upon those rights. If examination of the certificates be barred to determine the limitations imposed, then their inspection must, at the same time, be prohibited to ascertain the rights granted.

The order of the Commission denying Wilson's petition must be regarded as prima facie just, reasonable and correct. Virginia Constitution, § 156 (f); *Jessup* v. *Commonwealth*, 174 Va. 133, 142, 5 S. E. 2d 482. Wilson has not overcome this presumption of correctness on this appeal. Accordingly, the order appealed from will be

*Affirmed.*